# Cheney, Trustee v. Nathan.

*Bill in Equity for the Determination of Claims to Land and to Quiet Title.*

1. *Husband and wife; conveyance of wife's property must be joined in by husband.*—Where land conveyed in a deed constitutes the statutory separate estate of a married woman, the deed, under the provisions of the statute (Code, § 2348) is invalid, unless the husband joins therein "in the mode prescribed by law for the execution of conveyances of land."

2. *Deeds; conclusiveness of certificate of acknowledgment; when impeached by parol evidence.*—While a certificate of acknowledgment of the execution of a deed, when made by an officer authorized to take such acknowledgment and attached to such deed, is, in the absence of fraud or duress, conclusive of every fact appearing on its face and can not be impeached by parol evidence; yet, when an officer affixes a formal certificate of acknowledgment to a deed before there is a signature by the grantor to the instrument, and which was not signed in the presence of the officer and was never in his, or he in the grant-

[Cheney, Trustee v. Nathan.]

or's, presence after it was signed, nor in the officer's possession after its signature, such certificate is void and may be shown to be so by parol evidence.

3. *Same; facts of this case.*—A notary public affixed his formal certificate of acknowledgment to an unsigned deed, which was then in his possession, and carried it to the purported grantors, who were husband and wife, for their signature. The property described in the deed was the wife's statutory separate estate. The wife signed the deed in the notary's presence, but the husband declined to do so. Without correcting the acknowledgment, the notary delivered the deed to the grantee named therein, who, some time afterwards, prevailed on the husband to sign said deed, but no acknowledgment was made by him before the notary, nor was the notary present at the time of the signature, nor was the deed in his possession after it was signed by the husband. *Held:* That parol evidence of these facts was admissible, that the certificate of acknowledgment of the husband's execution of the deed was void, and that the deed attempting to convey the wife's statutory separate estate, not having been executed by the husband in the mode prescribed by law for the execution of the conveyance of land, was invalid.

4. *Bill to determine and quiet title; no affirmative relief can be granted on answer filed under the statute.*—Upon a bill filed under the statute "to compel the determination of claims for real estate in certain cases, and to quiet title to the same," approved December 10, 1892, (Acts 1892–93, p. 42), there cannot be granted any affirmative relief to a defendant who comes into the case only by answer propounding his claim of title to, or interest in, the land, and praying for no relief, except that it be adjudged whether or not he "has any estate, interest or right in, or incumbrance upon said land or any part thereof, and what such interest, estate, right' or incumbrance is, and in and upon what part of said land the same exists;" the purpose of the suit being simply to fix the status of the land in respect of the ownership, and to establish by a decree of the court muniments of title thereto.

5. *Same; same.*—On a bill filed under such a statute, to which the answer provided for by the statute is interposed, it is error for the chancellor in rendering his decree to enjoin the complainant from asserting any further claim or interest in the land involved, and to order a reference to ascertain the rents, &c.; since, under the provision of section 6 of the statute, which requires that all proceedings shall be had in accordance with the practice of courts of equity, such affirmative relief could only be properly decreed on a cross bill filed by the defendant containing appropriate averments, which are sustained by competent evidence.

APPEAL from the Chancery Court of Montgomery. Heard before the Hon. JERE N. WILLIAMS. The bill in this case was filed by G. O. Janney and

John C. Cheney, as trustees of Moses Bros., against Emily T. Nathan, under act of the legislature of Alabama, (Acts 1892–93, p. 42), to compel the determination of the claims of said Emily T. Nathan to the east half of lot No. 11, on the north side of Dexter Avenue (formerly Market street) in the city of Montgomery.

The bill avers that on the 17th day of July, 1891, said Emily T. Nathan and her husband, Lewis W. Nathan, executed to Sayre, Levin and Snodgrass, the former trustees of Moses Bros., for the benefit of their creditors, a deed to said property. Said deed is attached as an exhibit to said bill, and shows that the same was executed for the sum of one dollar, and the "further consideration of said conveyance being in full settlement of all claims and demands to or from said grantors to said Moses Bros., on account of the property hereinafter conveyed." Said exhibit further showed that said deed was signed by said Emily T. Nathan and her said husband, Lewis W. Nathan, and had attached thereto the following acknowledgment: "State of Alabama, Montgomery county. I, N. B. Holt, a notary public in and for the said county in said State, hereby certify that Emily T. Nathan and Lewis W. Nathan, her husband, whose names are signed to the foregoing conveyance, and who are known to be, acknowledged before me on this day that, being informed of the contents of this conveyance, they executed the same voluntarily on the day the same bears date. Given under my hand this the 17th day of July, 1891. N. B. Holt, Notary Public."

The bill further avers that said Sayre, Levin and Snodgrass had resigned and complainants had been appointed in their place; that complainants had received from said trustees a conveyance of said property. The bill contained all the averments as to possession, etc., required by the statute; and averred that said Emily T. Nathan claimed said deed to be void because she alleged the property constituted her statutory separate estate under the laws of Alabama, and that only a nominal consideration was given for the same. The bill contained the prayer for relief provided in the statute.

The said Emily T. Nathan answered the bill admitting the execution of the said deed by her under the circumstances thereinafter set forth; she denied that said deed was ever executed by her husband, and that said

deed was of any binding force upon her or of any legal
validity. She admitted that she was reputed to be the
owner of said property as averred in the bill. She
averred that said property constituted her statutory sep-
arate estate, attaching as exhibits the conveyances by
which it was acquired by her; that no consideration
was ever paid her for said conveyance, and that the same
was wholly voluntary. "That she signed said deed
solely and alone because of the importunities of her
brothers, who composed the firm of Moses Bros., and
yielding entirely to the influence exerted on her by them
in that behalf, through her great affection and confi-
dence in them." She avers "upon information and be-
lief" that her brothers, at the time of prevailing upon
her to sign said deed expected the assets of said firm to
be sufficient for the payment of their debts, and that the
said property would again come into their possession
and be restored to her, which expectation could not be
realized. She further stated, "on information and be-
lief," that her husband never executed said deed with
respondent, and that the certificate of acknowledgment
attached to said deed is not true as to her said husband;
that said Lewis W. Nathan refused for some time after
said respondent had signed said deed to sign it himself,
and it was some two or three weeks after respondent had
signed it before her said husband signed the same, and
that he never signed it in the presence of any attesting
witnesses nor in the presence of N. B. Holt, the said no-
tary public, and never made any acknowledgment of its
execution by him before said Holt, or any other officer
or person authorized to take acknowledgments of deeds.
She further averred, "on information and belief, that
the said Holt wrote out said certificate of acknowledg-
ment, including the names of both respondent and her
husband, supposing that they would make such ac-
knowledgment before him, but respondent avers that
her husband refused to make such acknowledgment be-
fore said Holt, and the latter neglected to erase the said
Lewis W. Nathan's name from said certificate after his
refusal to acknowledge said deed."

She prayed in said answer that it might be taken as
a cross-bill and said complainants made parties thereto
and required to answer same; "that said deed of which
exhibit B. to the original bill is a copy" might be de-

creed to be delivered up and cancelled; that said complainants might be enjoined and restrained from further asserting or attempting to assert any further claim to said property and from all interference or intermeddling therewith; that said complainants might be compelled to account for the rents to her and be required to deliver up possession to her.

On the 19th day of January, 1894, said G. O. Janney and John C. Cheney filed an answer admitting the conveyance of said property to said Emily T. Nathan as alleged in said cross-bill, but averring that no consideration was paid by said cross complainants to either of the grantors named in said deeds to her, that if anything was paid for said property the same was paid by the firm of Moses Bros. of whose estate these respondents were trustees as averred in their original bill. They deny in their said answer that no consideration was paid to said Emily T. Nathan for the said deed executed by her to their predecessors in said trust; they also denied that said cross-complainant executed said deed because of the importunities of her brothers, and that the only consideration for said deed was her confidence and affection for them. They averred that they had no knowledge or information of the averment in said cross-bill as to the expectation of said Emily Nathan's brothers that their assets would be sufficient to pay their debts, and that said property would again come into their possession and be restored to her, and they aver that they were advised that such expectations and intentions were immaterial to any issue in the cause. They also denied in their said answer that cross-complainant's husband had never executed said deed with her and they averred that he did execute said deed and acknowledged the same before N. B. Holt, the notary public before whom it purports to be acknowledged, and that said Holt wrote said certificate of acknowledgment upon the supposition that her husband would acknowledge it and afterwards neglected to erase his name from said certificate. They aver that said Nathan did acknowledge the execution of said deed, and that said certificate of acknowledgment was placed upon said deed because the said Nathan had executed the same, and they denied that said deed did not divest her title to said property.

And, further answering said cross-bill, they averred

[Cheney, Trustee v. Nathan.]

at the time of the execution of said conveyance there was a mortgage upon said property for the sum of five thousand dollars which had been executed by cross-complainant and her husband to one Tyson, that said mortgage was outstanding and a first lien upon said premises: that immediately after the execution of said deed their predecessors in the administration of said trust paid over to said Tyson the amount of said mortgage indebtedness, and had the note evidencing said indebtedness, and the said mortgage transferred to them and the same transferred by said Sayre, Levin and Snodgrass to them with other property belonging to the estate of Moses Bros.; that said money used by said Sayre, Levin and Snodgrass in purchasing said note and mortgage was money belonging to the estate of Moses Bros., and said purchase was made by them for the benefit of the trust estate, and that said claim so taken remains wholly unpaid.

The complainants incorporated in their answer to said cross-bill certain demurrers which were sustained by the chancellor; and upon cross-complainant's failing to amend her bill, the cross-bill was subsequently dismissed.

While the cause was pending, G. O. Janney, one of the trustees, died, and his death being suggested to the court, it was ordered that the cause proceed in the name of J. C. Cheney as surviving trustee.

The complainant offered in evidence the original deed signed by Emily T. Nathan and Lewis W. Nathan, together with the certificate of the notary public attached thereto and with the indorsements of the probate judge thereon. The certificate of the notary public was as hereinabove set forth, and the indorsements of the probate judge showed that said deed was duly recorded in the office of the probate judge of Montgomery county, within 30 days after the same was executed.

The evidence for the defendant showed that the lot conveyed in the deed was the separate property of Mrs. Nathan, and that she executed the same at the solicitations and importunities of her brother, H. C. Moses; that the circumstances of Lewis W. Nathan's signing the deed and the notary public's certificate of acknowledgment thereon were substantially as recited in her answer.

The complainant objected to and moved to suppress the

testimony of each of the witnesses for the defendant that Lewis W. Nathan did not acknowledge the execution of the deed before the notary public, and that at the time the notary public made the certificate of acknowledgment the said Lewis W. Nathan did not even sign the deed.

On the submission of the cause on the pleadings and proof, the chancellor rendered the following decree: "This cause by agreement filed May 20th, 1895, is submitted for final decree upon the pleadings and proof as named in the note of submission made and filed April 15th, 1895. No ruling is asked for upon complainant's objection to certain of the defendant's testimony, but the legal testimony alone has been considered. Upon consideration I am of the opinion from the facts in evidence that the complainant's predecessors in trust acquired no interest in the lot of land described in the bill by virtue of the conveyance copied in Exhibit B. [the deed from Mrs. Nathan] which is a part of the bill, and that complainant is not entitled to any relief. And the court proceeding to finally determine and fix the rights of the parties in said property, it is adjudged and decreed that the original deed offered in evidence and a copy of which is shown in Exhibit B., was, and is void and of no effect. And it is ordered that complainant surrender said original deed to the register who is hereby directed to endorse upon the same, that it is cancelled by the order of the court. It is further adjudged and decreed, that complainant deliver to defendant the possession of said lot of land and that he (the complainant) be and is hereby enjoined from asserting any further claims to or interest in the same. It is further ordered and decreed that the register state an account between the complainant and defendant, ascertaining and showing the amount of the rents derived from said lot since the commencement of this suit, also showing the amount of taxes, insurance and necessary repairs, paid on and for said lot for the same period, stating the balances. The register will report at the next term, the cause being retained on the docket for such other proceedings as may be necessary. It is ordered, that each party pay one-half the costs thus far accrued, for which let the execution issue."

[Cheney, Trustee v. Nathan.]

From this decree the complainant appeals, and assigns the rendition thereof as error.

TOMPKINS & TROY and HORACE STRINGFELLOW, for appellant.—1. The certificate in the absence of fraud, is conclusive of the facts recited. There was certainly no fraud here; the deed was never delivered until Nathan had signed it with the intention of making it operate as a conveyance, and had delivered it, with, as he and his wife knew at the time, a certificate upon it representing that he had acknowledged it. They had knowingly and voluntarily put the paper forth with a declaration upon it that he had acknowledged it; and to permit him or his wife now to impeach that recital would be to permit them to perpetrate a fraud, for certainly there is no evidence even tending to show that there was any fraud on the part of the notary or of the grantees in attaching the certificate of acknowledgment to the deed, and in the absence of such fraud, the certificate is conclusive of the facts recited.—*Amer. F. L. M. Co. v. King*, 105 Ala. 358; *Jinwright v. Nelson*, 105 Ala. 389; 1 Amer. & Eng. Encyc. of Law, 148, *Shelton v. Aultman*, 82 Ala. 314; *Grider v. Amcr. F. L. M. Co.*, 99 Ala. 281; *Amer. Frechold L. M. Co. v. James*, 105 Ala. 347; *Read v. Rowan*, 18 So. Rep. 211; *N. E. Mortg. Sec. Co. v. Payne*, 18 So. Rep. 164; *Edinburgh M. Co. v. Peoples*, 102 Ala. 241.

The action of the chancellor in enjoining the appellant from asserting any further claim to the property, in the face of the proof that he was the owner by transfer of a debt secured by a mortgage on the same, is so manifestly erroneous that we do not see how any attempt can be made to sustain it. It is well settled that "if a defendant seeks any relief, a cross bill is an indispensable prerequisite to its attainment."—*Cotton v. Scott*, 97 Ala. 448; 3 Brick. Dig. 282, § 253.

2. But counsel for appellee contend that, notwithstanding the dismissal of the cross bill, the statute under which the bill in this case was filed, not only authorized but required the chancellor to go on without prayer therefor by defendant and give her every relief in relation to the land that he could think of. We see nothing in the statute which requires more than that the chancellor shall finally "settle and determine

whether the defendant has any estate or right in or incumbrance upon said lands or any part thereof, and what such interest, estate, right or incumbrance is, and in or upon what part of said lands the same exist." Certainly if relief is to be given defendants in proceedings under this statute, independent of what they may in each case specifically pray for, the relief must be the same in each instance. This uniformity can only be obtained either by some rule of chancery practice prescribing such uniform relief, or by some provision of the statute. There is certainly no provision in the statute that in case it is adjudged that the defendant has an interest in the land the court must order the deed of complainant to be cancelled, must order a surrender of possession to him, must order an accounting to him of the rents and profits, less sums paid for "taxes, insurance and necessary repairs;" must enjoin complainant from asserting any claim or interest in said land, however independent of the matters at issue in the suit, as decreed in this case. In fact the act provides that the court of equity "shall proceed according to the course and practice of the court," only requiring that the decree must ascertain the interest of the defendant in the land.

A. A. WILEY and W. S. THORINGTON, *contra.*—In the case of *Grider v. Mortgage Co.*, 99 Ala. 281, in a careful and exhaustive opinion, the conclusion is reached that if the grantor appeared before the officer and made any acknowledgment at all, the certificate is conclusive, but if he did not appear before the officer and made no acknowledgment, the officer's certificate can be impeached by parol proof. Under the influence of that decision Mrs. Nathan is entitled to a decree in this case. In the cases of *Amer. F. L. Mortgage Co. v. James*, 105 Ala. 347, and *Jinwright v. Nelson*, 105 Ala. 399, the case of *Grider v. Mortgage Co.*, *supra*, is slightly modified, but not to such an extent as to deprive it of its weight as a controlling authority in this case. In the *James* and *Jinwright* cases, it is held that although no acknowledgment is in fact made, if the grantor signs the deed in the presence of the officer, and hands it to the officer, the certificate of acknowledgment will be held conclusive. So that, the only qualification of the *Grider* case by the *James* and *Jinwright* cases is, that according to the *Gri-*

*der* case, unless an acknowledgment of some kind was made, the certificate of the officer could be impeached by parol proof; while in the *James* and *Jinwright* cases it is held that, if the grantor signs the paper in the presence of the officer, then, even if no acknowledgment whatever is made, the certificate of the officer is conclusive, for he had jurisdiction of the parties.

Defendant filed an answer and cross-bill, and the ground for relief set forth in the cross-bill was that she was a married woman, and as such had no capacity to make a voluntary conveyance to appellants of property which was her statutory separate estate. The court sustained a demurrer to the cross-bill, and dismissed it on defendants failing to amend. That action of the court disposed of the cross-bill, but left defendant's answer with all the defenses therein set forth, including. the defense that the deed was never executed by her husband. The cross-bill was permitted by defendant to go out, because the statute under which defendants filed their bill expressly provides that in such cases the defendant shall set up all his right and title by answer, that the court shall proceed to fix and determine all the rights of the parties. In other words, the statute provides a new remedy and mode of proceeding in such cases. Its purpose is to provide a summary and inexpensive remedy to settle controversies with respect of lands, and contemplates that all the rights of the parties shall be ascertained and determined on bill, answer and proof. When it says the defendant shall set up his claim and right by answer, it negatives the idea of a cross-bill, and necessarily implies that he shall have all his right to which the answer shows he is entitled. While the statute provides that the pleadings shall conform as near as may be to the general chancery practice, it makes several changes in that practice, and to that extent is exclusive. One of those changes is the requirement that the answer shall be the mode of asserting all of defendant's claim and title, and it is also contemplated that the bill shall set forth all of complainant's claim and title.—Acts 1892-93, p. 42.

McCLELLAN, J.—The deed from Mrs. Nathan to complainant's predecessors was invalid, the land embraced in it being her statutory separate estate, unless

her husband joined therein "in the mode prescribed by law for the execution of conveyances of land."—Code, § 2348.

Attached to the deed is the certificate of a notary public in due form to the effect that the husband, Lewis Nathan, acknowledged his signature to the deed; and his signature appears to the paper. But it is clearly proved that at the time this certificate was made he had not signed the deed, that he did not sign it at any time in the presence of the notary or while the latter had the paper and that he at no time acknowledged his signature, nor was it attested. More than this, it was affirmatively shown that the only time he was ever in the presence of the notary was upon an occasion when the notary came to him at the instance of a third party for the purpose of having him execute the instrument, and that on this occasion he positively declined and refused to sign the same. At this time the notary's certificate of acknowledgment both as to himself and Mrs. Nathan was on the paper, fully perfected in form and subscribed by the officer, having been written out and signed even before the deed was presented to Mrs. Nathan for signature; and she had signed it before it was thus presented to her husband. Upon Nathan's refusal to sign, the notary delivered the paper, still bearing his certificate that both the husband and the wife had acknowledged their signatures to it, to the third party who had sent him to have it executed. Some days after this, Nathan yielded to the solicitations of this third party and signed the paper.

We have carried the doctrine forbidding the impeachment of certificates of acknowledgments of the execution of deeds by parol evidence as far as any court; but we have never laid down a rule, nor proceeded upon considerations which would involve the establishment of a rule, which would protect this certificate from impeachment by such oral evidence as has been adduced. We have held that the certification is a judicial act, done in the exercise of judicial power; and that where the grantor appears before the officer for the purpose of acknowledgment, or for the general purpose of executing the instrument, or that where the officer has the paper for the purpose of having it executed, and the grantor is in his presence and their signs, parol evidence will not be received to contradict the certificate of acknowledgment;

[Cheney, Trustee v. Nathan.]

and it may be that the principles we have laid down
would involve the further proposition, though we have not
so declared, that, if the name of the grantor appears to the
instrument—if he has previously signed it—and the nota-
ry takes it and goes into his presence for the purpose of
securing his acknowledgment, the certificate of acknowl-
edgment could not be impeached even by showing that the
grantor was ignorant of the purpose of the notary's visit
and even of his official capacity, and of his possesssion of
the paper at that time, and that no acknowledgment was
made and that nothing suggesting or looking to an acknowl-
edgment was said or done. But these principles in their
broadest application would not protect the certificate
involved in this case. The paper was not signed in the
presence of the notary. It was never in the presence of
the grantor and the notary after it was signed, nor in
the possession of the notary after it was signed. When
the notary had it and executed his certificate of ac-
knowledgment, there was nothing to acknowledge, there
was no signature, nor was there any signature at any
time while it was in his possession. Treating his pow-
ers and acts as judicial, they were lacking in one essen-
tial of jurisdiction. *There was no signature of any kind,
genuine or otherwise before him.* He had to do officially
only with signatures. His powers were not called into
exercise until there was a subscription to be acted upon.
There being no signature, there was nothing for him to
certify an acknowledgment of. The grantor was not be-
fore him : Nathan refusing to sign was not a grantor.
He had a paper writing in the form of a deed before him,
but he had neither a signature to be acknowledged nor a
signatory to acknowledge his execution of the paper.
He was without jurisdiction to act in the premises, and
his action, like that of other judicial officers and of courts
proceeding without having acquired jurisdiction, is void,
may be shown to be so by parol, and has been shown to
be so in this case.

The chancellor, however, erred in so far as he under-
took to enjoin the complainant "from asserting any fur-
ther claims or interest in" the land, and in ordering a
reference to ascertain rents, taxes, insurance, etc. We
do not construe the statute under which this bill was
filed (Acts 1892-93, p. 42), to authorize any affirmative re-
lief to the defendant, coming into the case only by answer,

propounding his claim of title or interest to or in the land and praying no relief, except to adjudge whether he "has any estate, interest, or right in, or incumbrance upon said lands, or any part thereof, and what such interest, estate, right, or incumbrance is, and in or upon what part of said land the same exists." The purpose of this statute is simply to fix the status of the land in respect of ownership, to re-establish by the decree muniments of title to it, (*Ward v. Janney et. al.*, 104 Ala. 122) ; and, upon a bill filed under the statute and to which only the answer provided for by it is interposed, only the statutory relief can be awarded. This we think is emphasized by section 6, which is to the effect that, except as otherwise provided in the act, all proceedings under it shall be had in accordance with the practice of courts of equity in this State. Of course, the chancery court, taking jurisdiction on a statutory bill, might go on and settle the claims of the parties in respect of the land, whether they are claims for the settlement of which the statute provides or not, but an adherence to the practice of the court would require that such other claims be presented by appropriate pleadings. The injunction which was awarded the respondent and the reference to the register with a view to awarding her rents was the granting of affirmative relief not contemplated by the statute, and which could have been properly decreed only upon a cross bill by her with appropriate averments, sustained by competent evidence. The decree will be modified here by striking from it these two features, and as modified it will be affirmed.

Modified and affirmed.