# Adler *et al.* *v.* Sullivan.

*Bill in Equity to compel the Determination of Claims to Land.*

1. *Bill to compel determination of claims to land; sufficiency of averment; pleadings.*—A bill filed under the act approved December 10, 1892, "to compel the determination of claims to real estate," &c., (Acts of 1892-93, p. 42) which contains the required averment, that complainant is in peaceable possession of the land under claim of ownership, and that the defendants assert a hostile interest, is sufficient to invoke the jurisdiction of equity conferred by the statute, and is not subject to demurrer, even though it shows that the tax titles under which complainant claims are invalid; but in such cases

[Adler *et al.* v. Sullivan.]

the defendants must answer in order that, as provided by said act, it may be adjudged by the court whether they have any interest in the lands, and that a decree may be rendered which shall finally settle the rights of the parties to the land in controversy.

APPEAL from the Chancery Court of Montgomery.

Heard before the Hon. JERE N. WILLIAMS.

The bill in this case was filed on June 19, 1895, by the appellee, Martin H. Sullivan, against the appellants, under the act approved December 10, 1892, "To compel the determination of claims to real estate," &c.—Acts of 1892-93, p. 42.

The complainant claimed title by mesne conveyances from purchasers of the lands involved in the controversy at tax sale. The averments of the bill and the ground of demurrer insisted upon, and the facts of the case are sufficiently set forth in the opinion.

Upon the submission of the cause upon the demurrer interposed, the court rendered a decree overruling the demurrer. The respondents appeal from this decree, and assign the rendition thereof as error.

JOHN P. TILLMAN, GEORGE F. MOORE and TOMPKINS & TROY, for appellant.

THOS. H. WATTS, *contra*.

HARALSON, J.—The bill in this case described the lands with certainty, and averred complainant's possession of them for more than five years before the institution of the suit; that complainant's title to said lands is denied and disputed by defendants, who claim to own the same, or some interest therein, or to hold some lien or incumbrance thereon ; that no suit is pending between any of the parties and complainant to enforce the validity of their claim, title or incumbrance ; that complainant brings his suit to settle the title to the lands and clear up all doubts and disputes concerning the same, and calls on each defendant to set forth and specify his title, claim, interest or incumbrance, and by what instrument the same is derived or created. It prays the court to adjudge and decree, that all title, claim, interest or incumbrance set up to the lands by defendants, or any of them, are invalid, and that complainant's title thereto

is clear of all doubt and dispute concerning the same, and that each of the defendants be perpetually enjoined from setting up or asserting any claim or title to, or incumbrance on said lands, or any part thereof, adverse to complainant, and for general relief.

The mere reading of the bill in connection with the statute, under which it is filed,—Acts, 1892-93, p. 42,— suffices to show that it contains the necessary averments under the act, to give the court jurisdiction and to authorize relief. Indeed, we do not understand the demurrer to question the · sufficiency of these averments. It is true, that in addition to the foregoing averments, the bill,—as was done in the case of *Ward v. Janney & Cheney*, 104 Ala. 122,—sets out the source and character of complainant's title and possession, but this, while it served to give notice to defendants of the title and possession on which he relies in opposision to any claim or title that defendants may bring to view in their answers, was not indispensable to the equity of the bill.

The appellants waive all grounds of demurrer in their argument, except the one, whether the lands in question were subject to taxation when the tax sales were made, under which complainant claims title. The sole object of this contention is to show, that the complainant has no title to the lands under said tax titles set up in his bill, on which he can legally hold them. In other words, the proposition is, if complainant by his bill shows that his claims of tax titles are invalid, he has no right of title to or possession of the lands, and his bill must fail. But, this contention is not admissible in a suit under the act in question. It may be that the tax titles under· which complainant claims, may fail for many reasons, but if they do, *non constat* the defendants have a better right of title or possession than he has. The act does not require the complainant to have title by possession or the right of possession, but if he has peaceable possession, under claim of ownership, as contradistinguished from possession which is disputed or contested, it is all, as to this, the statute requires. The averment as to possession is,—just as the statute requires,—that no suit is pending between any of the parties and complainant to enforce the validity of any title, claim or incumbrance of defendants. As to them, the possession is thus averred to be peaceable and un-

disturbed. It can.not be known before the answer of defendants, that they have any title to, interest in or incumbrance on said lands. They may in their answer disclaim any interest. It may be, again, if they file answers, that they can show no right, title or interest which will be superior to complainant's right of possession. All this is to appear on the coming in of their answers.

The title to the act in question indicates its purpose to be, "to *compel* the determination of claims to real estate," &c., and to require a defendant to disclose his claim. Section 3 of the act is further indicative of this purpose, in that it requires, "that if any defendant shall answer, claiming any estate, or interest in or incumbrance on said lands, or any part thereof, he shall in such answer specify and set forth the estate, interest or incumbrance, so claimed, and if not claimed in or upon the whole of said lands, he shall specify and describe the part in or upon which the same is claimed, and shall set out the manner in which, and the sources through which, such interest, estate or incumbrance is claimed to be derived."

The fourth section provides, that a trial by jury, upon the application of either party, may be directed to try the validity of such claim, or to settle the facts, or any specified portion of the facts upon which the same depends, and the court of equity shall be bound by the result of such trial, unless set aside for a new trial. But, when such trial is not requested, the provision is, that the court of equity shall proceed to inquire into and determine such claims, interest and estate, according to the course and practice of the court, and "finally settle and adjudge whether the defendant has any estate, interest, or right in or encumbrance upon said lands, or any part thereof, and what it is, and upon what part of the lands the same exists."

The final decree shall settle the rights of the parties in the lands, which shall be binding and conclusive upon them.—Section 5. "The purpose of the statute [as we said in *Cheney*, *Trustee*, *v. Nathan*, 110 Ala. 254] is simply to fix the status of the land in respect of ownership,—to re-establish by decree muniments of title to it." Without the answer to the case as made by the bill, such a decree could never be rendered.

The statute is an extension of the remedy in equity

theretofore existing for the removal of clouds on titles.
Before its enactment, as was held, "a mere fear of suit,
or that another merely questioned one's title, or asserted
a hostile title, will not justify the court in intervening
and compelling litigation which might not otherwise
arise," and that it was "an injury reasonably appre-
hended to an existing right, which, if not prevented,
will be irreparable ; or an inability to defend and protect
himself on common law principles against some act *in
pais*, or some legal proceedings of his adversary, will
authorize the party to invoke the interference of a court
of equity."—*Rea v. Longstreet*, 54 Ala. 294.   Or, as it
was elsewhere said, if the bill disclosed "no more than
an unquiet and unfounded apprehension of the validity
of the appellant's title, and a false, clamorous assertion
of hostile title," it was without equity.   The court
would not in such case interfere to quiet the one or to
silence the other.—*March v. England*, 65 Ala. 284 ; *Echols
v. Hubbard*, 90 Ala. 309 ; *Lytle v. Sandefur*, 93 Ala. 399.
This statute goes in advance of that remedy, and in
addition, allows any person in peaceable possession of
lands, claiming to own the same, whose title thereto, or
any part thereof, is denied or disputed, or when any
other person claims or is claimed or is reputed to own
the same, or any interest therein, or to hold any lien or
incumbrance thereon, and no suit shall be pending to
enforce or test the validity of such title, claim or incum-
brance, to bring and maintain a suit in equity to settle
the title to said lands, and clear up all doubts and dis-
putes concerning the same.

This act is a substantial transcript of a similar statute
in New Jersey, many times the subject of construction
in the courts of that State.   See Vol. 3 General Statutes
of New Jersey, p. 3486, and cases referred to there-
under.

In *Jersey City v. Lembeck*, 31 N. J. Eq. 255, the court
say : "The purpose of the act was to relieve, not persons
who had the power to test the hostile claim by a direct
proceeding in the usual mode, but to aid those persons
whose situation afforded them no such opportunity.
The inequity that was designed to be remedied grew out
of the situation of a person in the possession of land as
owner, in which land another person claimed an interest
which he would not enforce ; and the hardship was that

the person so in possession could not force his adversary to sue, and thus put the claim to test. The title to the act indicates that this was the purpose, for it is an act 'to *compel* the determination of claims to real estate.'" *Albro v. Dayton*, 50 N. J. Eq. 574.

Still, again, that court holds, that "the act does not require that the complainant have title by possession, or the right to possession, or even adverse possession; it requires possession merely, the only qualification being, that it shall be peaceable, as contra-distinguished from disputed or contested possession, and that it shall be under claim of ownership."—*Powell v. Mayo*, 24 N. J. Eq. 178.

"The statute is remedial and highly beneficial. It should, therefore, be construed liberally. It is a statute of repose. It deprives the defendant of no right. His claim may be tried at law, if he desires it.    *   *   * It compels him to a speedy trial of the question; and in the meantime, and until the result be reached, this court prevents him from casting a cloud upon the complainant's title."—*Holmes v. Chester*, 26 N. J. Eq. 81.

From what has been said, it is manifest, that the defendants in their demurrer, are in anticipation of their rights and remedies under the bill as filed. It presents a case closely within the requirements and purposes of the statute, and should be answered, and allow the question of superiority of right between them and complainant, to be determined on the issues to be thus presented.

There was no error in overruling the demurrer, and the decree of the court below is affirmed.

Affirmed.