18 So.2d 865

**FEDERAL LAND BANK OF NEW ORLEANS v. VINSON.**

4 Div. 333.

Supreme Court of Alabama.

June 29, 1944.

Rehearing Denied July 25, 1944.

Crews Johnston, of Clayton, and H. D. Finlay, Jr., of New Orleans, La., for appellant.

Archie I. Grubb and Lee J. Clayton, Sr., both of Eufaula, for appellee.

**BROWN, Justice.**

This appeal is from an interlocutory decree overruling the defendant's demurrer to the bill and refiled to the bill as amended.

The bill is filed to quiet title to a tract of land situated in Barbour County, and specifically described.

The procedure is authorized by Sections 1109, 1110 and 1111 of the Code of 1940, Title 7.

Said Section 1110 provides: *"Contents of bill.*—The bill authorized by the preceding section must describe the lands with certainty, must allege the possession and ownership of the complainant, and that the defendant claims or is reputed to claim some right, title, or interest in or incumbrance upon such lands, and must call upon him to set forth and specify his title, claim, interest, or incumbrance, and how and by what instrument the same is derived and created."

And Section 1111 provides: *"Contents of answer.*—If the defendant shall answer claiming any estate or interest in, or incumbrance upon the lands, he must, in his answer, specify and set forth the title, claim, interest, or incumbrance so claimed, and if not claimed in or upon the whole of such lands, he must specify and describe with sufficient certainty, the part in or upon which the same is claimed, and the manner in which, and the sources through which such title, claim, interest, or incumbrance is claimed to be derived and created." Code of 1940, § 1111, Title 7.

The bill in this case follows the prescription of this statute in so far as it requires a specific and certain description of the land, and the allegation of ownership and possession of the complainant, and then particularizes and sets out the source and muniments of the complainant's title, and the source of the defendant's claim of title and incumbrance.

Stated otherwise, instead of the complainant being content to call upon the defendant "to set forth and specify his title, claim, interest, or incumbrance, and how and by what instrument the same is derived and created," as prescribed by the statute, he proceeds to set forth the basis of the defendant's right, including a mortgage incumbrance assumed by the complainant to the defendant, executed by Smith in his purchase from the defendant, and assumed by the complainant in his redemption from Smith, and the reservation by the defendant of a half interest in the mineral rights in the conveyance to Smith.

The purpose of this departure from the prescription of the statute, it would seem, was to have the controversy as to these rights determined on demurrer to the bill. The statute did not contemplate this course of procedure, and such procedure was condemned in the application of this statute soon after its enactment in Cheney, Trustee, v. Nathan, 110 Ala. 254, 265, 20 So. 99, 102, 55 Am.St.Rep. 26, where it was said: "We do not construe the statute under which this bill was filed (Acts 1892–93, p. 42) to authorize any affirmative relief to the defendant, coming into the case only by answer, propounding his claim of title or interest to or in the land, and praying no relief, except to adjudge whether he 'has any estate, interest, or right in, or incumbrance upon, said lands, or any part thereof, and what such interest, estate, right, or incumbrance is, and in or upon what part of said land the same exists.' The purpose of this statute is simply to fix the status of

the land in respect of ownership, to re-establish by the decree muniments of title to it. Ward v. Janney et al. [104] Ala. [122], 16 So. 73. And, upon a bill filed under the statute, and to which only the answer provided for by it is interposed, only the statutory relief can be awarded."

And, again, in Adler, et al. v. Sullivan, 115 Ala. 582, 585, 587, 22 So. 87, 88, where it was observed: "The final decree shall settle the rights of the parties in the lands, which shall be binding and conclusive upon them. * * * 'The purpose of the statute (as we said in Cheney [Trustee] v. Nathan, 110 Ala. 254, 20 So. 99 [55 Am. St.Rep. 26]), is simply to fix the status of the land in respect to ownership,—to re-establish by decree muniments of title to it.' *Without the answer, to the case as made by the bill, such a decree could never be rendered.* * * * From what has been said, it is manifest, that the defendants in their demurrer, are in anticipation of their rights and remedies under the bill as filed." (Italics supplied.)

In that case the bill in addition to the required averment prescribed by the statute, merely declared the source and quality of the complainant's title, and these averments were treated as surplusage, and not essential to the equity of the bill, and the decree overruling the demurrer was affirmed. See Denbo v. Sherrill et al., 241 Ala. 285, 2 So.2d 773; Grayson v. Muckleroy, 220 Ala. 182, 185, 124 So. 217.

The bill in the instant case goes further than did the bill in the Adler case, supra. Here, the bill sets up the character and source of the defendant's claim and title, and construing the allegations of the bill most strongly against the pleader, they show that the defendant has the legal title to the property through the mortgage executed by Smith for the purchase money, carrying a personal liability on the part of Smith which has been assumed by the complainant with legal effect of making him the principal payor. McKleroy v. Dishman, 225 Ala. 131, 142 So. 41; 37 Am.Jur. 316, § 982.

■ Whether or not the defendant, Federal Land Bank, acted within the power granted to it by Congress in attempting to reserve to itself an undivided one-half interest in the mineral rights in the mortgaged property, alleged to have been redeemed by the mortgagor, is a question that cannot be satisfactorily disposed of on demurrer, where we must resolve intendment in the allegations of the bill against the pleader. Federal Land Bank of New Orleans v. Mulkey, 228 Ala. 500, 153 So. 775.

■ If, as the appellee contends in brief, though this does not appear on the face of the bill when its allegations are construed most strongly against the pleader, the complainant effected a completed redemption of his property in pursuance of the statutory right of redemption, paying the debt and lawful charges, he is entitled to have his property restored to him without diminution by reservations made by the mortgagee.

■ Resolving intendments against the complainant, as must be done on demurrer, the transaction between Smith and the complainant was a repurchase, rather than a redemption; hence complainant acquired only such interest as Smith purchased from the defendant, and it holds a purchase-money mortgage, assumed by complainant, and an undivided interest in the mineral rights. These allegations cannot be treated as mere surplusage on demurrer.

We are therefore of the opinion that grounds 3, 8 and 9 of the demurrer to the bill and to the bill as last amended were well taken and that the court erred in overruling the demurrer. Wilkes v. Hood et al., 237 Ala. 72, 185 So. 748; Garrett v. Federal Land Bank, 239 Ala. 191, 194 So. 530.

Reversed and remanded.

All Justices concur.

### On Rehearing.

BROWN, Justice.

■ Whether the bill be treated as a statutory bill to quiet title, or one invoking the general principles of equity jurisprudence, which affords this remedy to a complainant *in possession holding the legal title*, it is essential to the equity of the bill that its allegations show that complainant is in possession of the interest; whether it be the mineral or surface rights, the title to which it seeks to clear and quiet. Ashurst v. McKenzie, 92 Ala. 484, 9 So. 262; Jones v. De Graffenreid, 60 Ala. 145; Daniel v. Stewart, 55 Ala. 278; Plant v. Barclay, 56 Ala. 561; 3 Brick.Dig. 358, § 375; Gulf Coal & Coke Co. v. Alabama Coal & Coke Co., 145 Ala. 228, 40 So. 397, 7 L.R.A.,N.S., 712; Code 1940, Tit. 7, § 1110.

■ Where the complaint asserts and relies on a superior paramount equity, and

not the legal title, the rule is different. In such case the title will not support the action of ejectment or the action in the nature thereof, the possession of the land by the complainant is not essential to the equity of the bill. Shipman v. Furniss, 69 Ala. 555, 44 Am.Rep. 528.

While the bill, following the prescription of the statute, alleges, "That the complainant, * * * is the owner of the legal title to all of said above described lands and all mineral thereon and thereunder in his own right; that he is now in the actual and peaceable possession of all of said lands, including all of said mineral; that complainant's title to one-half undivided interest is denied and disputed by the respondent; that said respondent claims to own the same; and that no suit is now pending to enforce or test the validity of his title thereto," it also alleges, "That on the 10th day of February, 1942, complainant made and entered into a written agreement with the General Ore Company, a corporation, under the terms and provisions of which agreement was given or granted an option to mine the mineral in and under said above described land, and purchase the same after being so mined. A copy of said agreement is hereto attached and made a part hereof as fully as though set out herein in detail, * * *, and marked Exhibit G. Complainant avers that on, towit, the 17th day of November, 1942, said General Ore Company duly exercised said option according to the terms and provisions thereof and immediately commenced the mining of said mineral in, on or under said lands as provided for under the terms and provisions of said written agreement," and was at the filing of the bill engaged in said mining operations.

Said agreement, Exhibit "G", shows that complainant and his wife for a valuable consideration granted and conveyed to the General Ore Company on December 20, 1942, "Any and all rights in, under over and upon the lands of first parties to prospect for bauxite and/or other minerals, to dig test pits, drill or dig wells, and to remove bauxite and/or other minerals therefrom as samples for analysis, together with the right of ingress and egress and all other rights necessary or incidental thereto. * * *

"(b) To purchase on the terms hereinafter set forth all the bauxite and/or other minerals in and under said lands. * * *

"5. If the option is exercised by second party to purchase all the minerals therein as provided in paragraph 3 (b), then first parties hereby grant and convey unto second party for the term of five (5) years from the date of the exercise of such option the right to mine and remove all bauxite and/or other minerals from said lands, and second party shall pay therefor the sum of fifty cents (50 ¢) per long ton, or 2,240 pounds each, dry basis, for all bauxite so mined and removed and ten per cent (10%) of the gross sales price in crude form f. o. b. shipping point for all other minerals mined and removed from said lands, railroad weights excluding moisture to govern in all instances; provided the annual minimum amount payable by second party to first parties shall be the sum of One Hundred Dollars ($100.00), which, however, to the extent that it represents an excess over the amount required to be paid during such year for minerals actually mined and removed shall be a credit against any amounts payable to first parties for any and all minerals mined and removed thereafter from said lands. * * *

"8. In the event second party exercises the option in paragraph 3(b), second party shall have the rights and privileges of ingress and egress· across and over said lands; to use such lands as are necessary in the opinion of said second party for the placing of waste and overburden; to use water and timber on the property for mining purposes; to erect buildings and to do all other things incident to or necessary for the mining and removal of bauxite and/or other minerals from said lands; and to wash and dry said bauxite and/or other minerals on said property, if desired."

The agreement is executed by the complainant and his wife as first parties under seal and witnessed by two witnesses.

Notwithstanding the general allegations first above quoted, the subsequent allegations in the bill show that the General Ore Company is in the actual possession of the mineral rights in said lands as the purchaser of such mineral rights. The third ground of demurrer addressed to the bill as·originally filed as a whole and as amended is in these words: "For that it appears from the allegations of the bill that complainant is not in peaceable possession of the undivided half interest in the minerals, title to which he seeks to quiet."

Construing the averments of the bill most strongly against the pleader, this ground of demurrer was well taken.

 The bill as amended shows that at the time it was filed, Smith, who purchased from the respondent Federal Land Bank, executed to the vendor a mortgage for $1200, covering said lands; that said mortgage was assumed by the complainant and his assumption of indebtedness was accepted by the respondent. Thus the complainant became the principal debtor and Smith the surety for the payment of said indebtedness.

There is an absence of averment in the bill that the indebtedness was paid before this bill was filed. We do not think it can be successfully contended that in these circumstances the complainant can maintain a bill to settle and quiet title to lands, the title to which is shown to be in respondent, without first paying said mortgage debt.

Counsel for appellee in the application for rehearing purporting to quote an excerpt from the opinion asserts that its meaning is not understandable. The fault in the application is that counsel does not correctly quote the expression in the opinion, which follows: "Resolving intendments against the complainant, as must be done on demurrer, the transaction between Smith and the complainant was a repurchase, rather than a redemption; hence complainant acquired only such interest as Smith purchased from the defendant and it holds a purchase-money mortgage, assumed by complainant, and an undivided interest in the mineral rights. These allegations cannot be treated as mere surplusage on demurrer."

The bill does not question the regularity of the foreclosure proceeding at which the respondent became the purchaser of all the mortgaged property, and by such purchase it became the holder of the title in fee, determinable by the exercise of the statutory privilege of redemption by the mortgagor. Baker, etc., v. Eliasberg & Bros. Mercantile Co., 201 Ala. 591, 79 So. 13, 15; Hargett v. Franklin County, 212 Ala. 423, 103 So. 40; Coon v. Henderson, 242 Ala. 144, 5 So.2d 397. It is well settled that while a complete redemption may be accomplished by negotiations between the parties (Long v. King, 233 Ala. 379, 171 So. 738), such redemption must be made from the party holding the title, and cannot be made by piece-meal. The process contemplated and required by the statute makes an indivisible entity of the act of redemption where the purchaser at foreclosure sale purchases the entire property. Morrison v. Formby, 191 Ala. 104, 105, 67 So. 668; Hargett v. Franklin County, 212 Ala. 423, 103 So. 40; Duncan v. Hubbard, 234 Ala. 202, 174 So. 291.

The respondent having become the holder of the entire title by its purchase at foreclosure sale clearly had a right to sell to Smith any part of the property, and, as between Smith and the respondent, had a right to reserve to itself a one-half interest in the mineral rights; and to effect a complete redemption of the title complainant was compelled to redeem from Smith the interest which he purchased, and from the Federal Land Bank the interest which it reserved. The respondent being the holder of a part of the title [an undivided one-half interest in the mineral rights] was a necessary party to the redemption. Wilkes v. Hood et al., 237 Ala. 72, 185 So. 748. There is an absence of allegation that by the assumption of the mortgage indebtedness given by Smith for the balance of the purchase money, and its acceptance by the respondent bank, the parties contemplated and effected a complete redemption of the entire title. As before stated, the bill does not allege payment of said mortgage.

We adhere to the conclusion that grounds three, eight and nine of the demurrer were well taken and the application for rehearing is overruled.

Application for rehearing overruled.

All the Justices concur.