# Black Warrior Coal Co. *v.* West, *et al.*

### Bill to Quiet Title to Minerals.

(Decided June 30, 1910. Rehearing denied Jan. 12, 1911.
54 South. 200.)

*Mines and Minerals; Adverse Possession.*—The mere execution and delivery of deeds to minerals of which the grantor is in the actual possession, cannot operate of itself as an abandonment of possession. If he continues the actual possession by a fiction of law he is held to be holding for the benefit of the grantee, or his assigns, as a tenant by sufferance; but as to the rest of the world, his possession is adverse.

(Anderson, McClellan and Sayre, JJ., dissent.)

APPEAL from Walker Law and Equity Court.

Heard before Hon. T. L. SOWELL.

Bill by the Black Warrior Coal Company against Milly West and others, to quiet title to mineral interests in certain lands. Decree for respondents and complainant appeals. Reversed and rendered.

TYSON, WILSON & MARTIN, LEITH & GUNN, HORACE STRINGFELLOW, and TILLMAN, BRADLEY & MORROW, for appellant. Under the facts in this case the presumption will be indulged in to sustain complainant's title. It was not necessary that the contents be more accurately shown as the conveyance was made more than forty years ago.—*Clements v. Cox,* 116 Ala. 567; *Norment v. Eureka Co.,* 98 Ala. 187; *Wilson v. Holt,* 83 Ala. 546; *Long v. Palmer,* 81 Ala. 384; *McArthur v. Carry,* 32 Ala. 76. The defendant is not only estopped from asserting title to the land, but her demand is stale, and the court will refuse to enforce her asserted right.—*Woodstock v. Roberts,* 87 Ala. 439; *Black v. P. C. & C. Co.,* 85 Ala. 511; *Jefferson v. Pettus,* 132 Ala. 671; *Harrison v. Heflin,* 54 Ala. 552; *McCartney v. Bore,* 40 Ala. 536; *Garrett v. Garrett,* 69 Ala. 429; *McArthur v. Coomils,* 32 Ala. 75; *Martin v. Keeley,* 132 Ala. 201; *Nettles v. Nettles,* 67 Ala. 601; *Johnson v. Johnson,* 5 Ala. 90; *Brackin v. Newman,* 121 Ala. 311. Under the facts in this case there was a privity of estate between appellant and Garner, that of grantor and grantee, and Garner's adverse possession of the surface was the adverse possession of the minerals in favor of his grantee.—*McBurney v. G. C. & C. Co.,* 118 S. W. 694; *Yancey v. S. & W. R. R. Co.,* 101 Ala. 238; *Abbott v. Page,* 92 Ala. 574. The fact of severance can be material only when the true owner claims thereunder, and when the true owner does not claim under the statute, it can play no part save as mere evidence of intention when pertinent.—*L. & N. v. Massey,* 136 Ala. 156. The theory upon which adverse possession becomes a perfect title is that the true owner by his own fault has failed to assert his right against the hostile holding for the full period of the statute.—*Lecroix v. Malone,* 157 Ala. 441. Notice of such holding must

be actual, or the holding must be so open and notorious as to raise the presumption of notice.—*Eureka Co. v. Norment*, 104 Ala. 631. Where such possession has been established it can be broken in only one of two ways.—*Hughes v. Anderson*, 79 Ala. 215; *Norment v. Eureka Co., supra.* Possession of the landlord and his tenant, of an ancestor and his heirs, or of a vendor and his vendee, may be tacked to complete the bar.—*Riggs v. Fuller*, 54 Ala. 141. We submit, therefore, that the evidence shows that the title of appellee to the minerals and the surface is barred by adverse possession.

BANKHEAD & BANKHEAD, for appellee. The evidence failed to establish title in the complainant, as the deeds under which it claimed were not produced and no sufficient evidence for the introduction of secondary evidence was brought.—*King v. Scheuer*, 105 Ala. 560; *Echols v. Hubbard*, 90 Ala. 313; *Potts v. Coleman*, 86 Ala. 101; *Elyton L. Co. v. Denny*, 108 Ala. 561. When minerals are severed from the surface by deed, possession of the surface does not include possession of the minerals.—*L. & N. v. Massey*, 136 Ala. 156; *Delaware v. Crill*, 18 Pa. S. Ct. 98; *Murray v. Allard*, 39 L. R. A. 249; *Cataline C. Co. v. Lloyd*, 176 Ill. 275; Barranger & Adams on Mines, 568; White on Mines and Mining, Sec. 438; *Caldwell v. Copeland*, 37 Pa. 427; 1 Cyc. 994. Under the circumstances in this case the possession of the land is referred to the legal title and respondent having the legal title was in constructive possession.— *Smith v. Gordon*, 136 Ala. 495; *So. Ry. v. Hall*, 145 Ala. 224. Title cannot be here divested by virtue of the doctrine of estoppel.—*Jones v. Peebles*, 130 Ala. 274. There is no room for the doctrine of laches or staleness of demand.—*Haney v. Legg*, 129 Ala. 625; *First Nat. Bank v. Nelson*, 106 Ala. 542. There is a

difference between a mere claim to property and the actual possession of property on the question of staleness of demand.—*Shorter v. Smith,* 56 Ala. 210; *Montgomery L. & P. Co. v. Lahey,* 121 Ala. 136. Where complainant seeks other than the statutory relief the bill must contain allegations other than those in the statute.—*Cheney v. Nathan,* 110 Ala. 254; *Interstate B. & L. Assn. v. Stock,* 124 Ala. 111.

EVANS, J.—The bill in this case was filed by complainants in the law and equity court of Walker county to quiet title to the mineral interests in the S. W. ¼ of the S. E. ¼ of section 26, and N. W. ¼ of N. E. ¼ of section 35, all in township 15, range 7, in Walker county, Ala. Milly West and others are made parties respondent upon the ground that they are claiming title, or are reputed to claim some right, title, interest, or claim in the mineral interest in the lands or incumbrances upon the same. Upon the trial Milly West alone asserts any claim. She claims the legal title to said mineral interest.

It may be said that the following facts are established by a preponderance of the evidence: That the legal title to the entire interest in the lands in controversy was in the heirs of John H. Plyer, when, in 1877, one James Garner entered into the adverse possession of the same under color of title. The said James Garner remained in such adverse possession until the year 1883, when he executed a deed to one Joseph W. Dimmick, trustee, purporting to convey to him all the coal and other minerals in, under and upon said lands; also all timber and water upon the same necessary for the development, working, and mining of said coal and other minerals and the preparation of the same for market and the removal of the same; and also the right

of way and the right to build roads of any description over the same, necessary for the convenient transportation of said coal and other minerals from said lands, and the conveying and transporting to and from said lands all material and implements that may be of use in the mining and removal of said coal and other minerals, or in the preparation of the same for the market. This instrument was executed on February 9, 1883, with full covenants of warranty as follows : "And we do for our heirs, executors, and administers covenant with the said Joseph W. Dimmick, heirs and assigns that we are lawfully seised in fee simple of said premises; that they are free from all incumbrances; and that we have a good right to sell and convey the same as aforesaid; that we will and our heirs, executors and administrators shall warrant and defend the same to the said Joseph W. Dimmick, trustee, heirs, executors and assigns forever against the lawful claims of all persons." On the 22d day of June, 1885, the said Dimmick, as trustee, executed a deed purporting to convey the said mineral interest, etc., in said lands to complainant, who was his cestui que trust as to said lands. After executing the deed to Dimmick in 1883, James Garner remained in possession of the lands, to all outward appearances, at least, just as he had been from the time he entered into possession of same in 1877 up to the time of executing said deed to Dimmick, and so remained until he died in 1904. In the year 1905 complainant entered and took actual possession of said mineral rights and privileges connected therewith as the deeds from Garner to Dimmick and from Dimmick to complainant purported to convey. Then hearing of the claim asserted by the heirs of John H. Plyer, it filed this bill, making them respondents, to quiet its title.

The respondent Milly West is a daughter of the said John H. Plyer, and all the other heirs of said John H. Plyer, or their grantees, conveyed by deed whatever interest they had to said coal and mineral rights in said lands to the said Milly West in the year 1905. Upon submission of the cause, upon final hearing, the judge of the Walker county law and equity court, sitting in equity, rendered a decree against complainant and in favor of respondent Milly West, finding that Milly West was the owner of the coal and mineral interest in said lands and that complainant had no title, claim, or interest in, or incumbrance upon, the coal, iron ore and other minerals in said lands. From this decree the complainant, the Black Warrior Coal Company, took an appeal, and assigns as error; (1) the rendering of the decree; (2) in holding that complainant had failed to show title or ownership of the coal, iron ore, and other minerals in the lands; (3) in holding that respondent, Milly West, was the owner of the coal, iron ore, and other minerals in said lands. There are assignments 4 and 5, but they are the same in effect as those above mentioned.

Had James Garner not executed the deed. in 1883, to Dimmick purporting to convey the coal and mineral interest in said lands to him, there could be no question but that his adverse possession would have ripened into a perfect title to the entire interest in the land several years before his death. What was the effect of the deed executed by the said James Garner to Joseph W. Dimmick? The appellee contends that it operated a severance of the agricultural from the mineral rights in the lands, thereby creating two separate estates in the lands, and that the deed operated an abandonment of the possession of the mineral interests by the grantor; and, the grantee failing to take possession of same

at that time, the possession of the mineral interest reverted to the heirs of John H. Plyer who had the legal title thereto. We think this position untenable. Can a case be found where it is held that the mere execution of a deed by one in the actual possession of land operates an abandonment of the possession? We think not. Where one in the actual possession of land to which he has the legal title, executes and delivers his deed thereto to another, with full covenants of warranty, until he does some act of surrendering the possession, he is regarded by the law not as abandoning the possession, but as holding the possession for the benefit of his grantee as his tenant at sufferance. So in the present case where there is no act of surrender of the possession, as between him and his grantee, the same rule obtains although he had not the legal title; because, having warranted the title, he is estopped from denying to his grantee that he had the title; and, until he surrenders the actual possession to his grantee, or does some act showing an abandonment of the possession, he must be regarded, so far as his grantee is concerned, as holding the same as the tenant at sufferance of the grantee. And, in a suit between the grantor and the grantee, where full covenants of warranty are made, such would be held to be the rule, regardless of whether the grantor had the legal title or not, because the grantor would be estopped from denying that he had the legal title, and the case would be determined as between them upon the assumption that the grantor did have the legal title. If this is true as between the grantor and grantee, then there has been no abandonment of the possession in favor of the disseised holder of the legal title, for the reason that the grantor cannot be regarded as holding the possession for the benefit of his grantee as his tenant at sufferance, and,

[Black Warrior Coal Co. v. West, et al.]

at the same time, as having abandoned the possession in favor of the disseised holder of the legal title. But, on the other hand, the holder of the legal title, not being privy to the deed made by Garner to Dimmick, has no interest in the fiction of law by which Garner is held to hold the possession as the tenant at sufferance of Dimmick and his assigns. So, the holding of Garner after the execution of the deed, with no act of surrender of possession, and with no change of the physical facts of possession in any way, as to them, he must be held as continuing the adverse possession already begun. When this adverse possession ripens into a legal title, that title immediately passes to his grantee Dimmick by virtue of the warranty deed already executed. And thus that becomes true, which was once false, but which the grantor was estopped, so far as his grantee was concerned, by the covenants of warranty in his deed, from denying, viz., that he had the legal title, and conveyed the same, by his deed to the grantee. We repeat that the mere execution and delivery of a deed to lands of which the grantor is in the actual possession cannot operate, of itself, as an abandonment of possession. If he continues the actual possession, as to his grantee, by a fiction of law, he is held to be holding for the benefit of his grantee, or his assigns, as his tenant at sufferance; but, as to the rest of the world, his possession is adverse for he admits none of their rights thereto. So far as the severance of the estates of the surface, or agricultural rights, from the mineral rights, is concerned in this case, that was only a fiction of law for the benefit of Garner's grantee. As a matter of fact and law, so far as the rest of the world was concerned, there was no severance of estates at all, until the adverse possession of Garner ripened into a legal title, and that became true, in fact, which, as to Dim-

23—170

mick, Garner was estopped from denying, but which in fact was not true, viz., an actual severance of the estate in the surface, or agricultural right, from the estate in the mineral right. This severance did not in fact happen until the legal title was ripened by the adverse possession of Garner and passed immediately from him to his grantee or assigns. Then there became actually two estates in the land as to all the world; for until that moment the entire legal title to the lands, both agricultural and mineral rights, were in the heirs of John H. Plyer, deceased. And just as the deed from Garner to Dimmick did not work a severance of the estates as to any one except as to Dimmick, for his benefit, by way of estoppel only; so, also, the execution of the deed did not of itself, as to any one except Dimmick, have any effect upon possession of the land or any estate therein. So we conclude that a preponderance of the evidence showed that the legal title to the coal and other minerals in, under and upon the lands described in complainant's bill of complaint, was and is in the complainant, the Warrior Coal Company; and that the respondents, nor either of them have any estate in or incumbrance on said lands.

The only case cited by counsel on either side, wherein the facts were substantially the same, and the relation of the parties the same, as here, the same conclusion is reached by the court as we have reached, though the reasons given are not the same. While we do not entirely agree with the reasoning of that case, we do agree with the conclusion reached. The case referred to is that of *McBurney v. Glenmary Coal & Coke Co., et al.,* 121 Tenn. 275, 118 S. W. 694.

It follows from what we have said that the application for a rehearing must be granted, and judgment of affirmance heretofore rendered must be set aside, and

the decree appealed from reversed, and one is here rendered in favor of complainant, in accordance with the relief prayed for in the bill.

Reversed and Rendered.

DOWDELL, C. J., and SIMPSON and MAYFIELD, JJ., concur. ANDERSON, McCLELLAN, and SAYRE, JJ., dissent.