**TENNESSEE COAL, IRON & R. CO. v. BREWER et al.**

No. 8396.

Circuit Court of Appeals, Fifth Circuit.

Nov. 15, 1937.

Augustus Benners and James R. Forman, both of Birmingham, Ala., for appellant.

W. H. Sadler, Jr., of Birmingham, Ala., for appellees.

Before SIBLEY, HUTCHESON, and HOLMES, Circuit Judges.

SIBLEY, Circuit Judge.

Tennessee Coal, Iron & Railroad Company brought statutory ejectment to recover the coal and other minerals under certain "sixteenth section" land in Alabama from Lena Brewer and R. Brewer, who had begun to mine them. At the conclusion of the plaintiff's evidence, the defendants offering none, a verdict was directed for the defendants. The propriety of that action is the question on this appeal.

In the organization of the State of Alabama, section 16 in each township was set aside for school uses. Such lands could be sold for school purposes, so that they were capable of private ownership. From 1852 to 1908 title by adverse possession for twenty years could be acquired as against the state. Since 1908 no limitation has run against the state, but in 1915 an act was passed (Code of Ala. § 6070) providing that the state should issue a patent to such lands upon satisfactory proof to the Attorney General that there has been possession under color of title for more than twenty years prior to May, 1908.

The evidence tended to show that long prior to 1881 one Frederick Bailey was in possession of some of the land in dispute, but no color of title appears in him. He gave or sold some of it to his son Robert and his daughter Harriet. In 1881 each of these three deeded the coal and other minerals under described portions of the land sued for on substantial money considerations to persons whose title has been regularly transmitted to the plaintiff. These deeds cover in the aggregate all the disputed lands. In an effort to show that the defendants claimed under a common grantor, plaintiff introduced numerous deeds from the above-named Robert and Harriet and other descendants and heirs of Frederick Bailey conveying, it appears to be conceded, such title as they had into one Bird and one Cost. These latter in 1925 obtained patents to the land in controversy on evidence submitted to the Attorney General of the long possession of the Bailey family and their grantees for more than twenty years prior to 1908. The defendants hold under these patentees.

The defendants contend that they have the paramount title of the state. They also contend that plaintiff has shown no title in the Baileys in 1881 when they undertook to convey the minerals, and if any title was conveyed it has long since been defeated by the subsequent adverse holding of the possessors of the surface. The plaintiff contends for a title by adverse possession in the Baileys in 1881, but if they had not then acquired it that the title which was afterwards ripened by the possession of their heirs and their assigns inured to the grantees of the mineral interests and was perfect in 1908. As to the patents it is contended that by 1908 the state had lost all title by limitation, and the patents are only a formal paper title having the effect of quitclaims from the state which in no wise prejudice the title which had ripened in plaintiff.

■ Since no color of title is shown prior to 1881 to which possession can be referred, Frederick Bailey's possession could ripen title no more broadly than his actual possession extended. The evidence is too vague to identify the land which he possessed, or to show that he possessed it for twenty years before 1881. It does not appear that a valid title to the minerals was conveyed in that year.

■ The evidence is sufficient to authorize a finding that possession of the land sued for was had for more than twenty years before 1908 under various colors of title by the heirs and grantees of the named Baileys. It shows that Cost and Bird so asserted to the Attorney General and obtained patents on that basis. The affidavits of others which they presented to the Attorney General were by adoption their own statements of the nature and course of the possessory title which they were claiming, and as admissions are evidence against them and their privies in title. The jury could conclude that the truth was as it was represented, that Cost and Bird derived title from the same source as the plaintiff did, and that the possession begun before 1881 had ripened into a title by limitation prior to 1908.

■ That such a title would inure to the grantees of the mineral interests appears to be established by the decision in Alabama Fuel & Iron Co. v. Broadhead, 210 Ala. 545, 98 So. 789. It is there declared that where the minerals are separately conveyed but there is no mining done, no physical severance of the minerals by anyone, the grantor holds possession for the benefit of himself and his grantee—that he is a quasi bailee of the mineral owner. It is also said that this relation will presumptively continue between their respective grantees and privies, and that an adverse holding for the prescribed period will ripen title in each as against other claimants of the title. These mineral deeds were promptly recorded in 1881. No one did any mining till Brewer did recently. Nothing appears which would show that any holder of the title to the surface repudiated his relationship to the mineral owners so as to disseize them. The jury might have found that, aside from the patents, each side claimed by virtue of the same title,

making its actual validity immaterial as between them. Cooke v. Avery, 147 U.S. 375, 13 S.Ct. 340, 37 L.Ed. 209; Davis v. Brandon, 200 Ala. 160, 75 So. 908; Perolio v. Doe, 197 Ala. 560, 73 So. 197.

 The patents, while they set at rest any question between these parties and the state touching the title, do not control their rights inter sese. If indeed a limitation had ripened against the state, the patents did not convey a paramount title, but no title at all. The act that authorized them did so only when it could be shown that a limitation title had ripened under color of title before 1908. The patents were not intended to convey title but to acknowledge that the state had already lost title and to furnish record evidence of that fact. In State v. Michie, 222 Ala. 682, 133 So. 734, the Supreme Court so declares.

Upon the present evidence a verdict should not have been directed for the defendants. The judgment is reversed, and the case remanded for further proceedings not inconsistent with this opinion.

Reversed.