24 So.2d 133

### BUCKELEW et al. v. YAWKEY et al.
### 4 Div. 380.

Supreme Court of Alabama.

Dec. 20, 1945.

Ralph A. Clark, of Andalusia, for appellants.

305

White, Bradley, Arant & All, of Birmingham, amici Curiae.

Powell, Albritton & Albritton, of Andalusia, for appellees.

BROWN, Justice.

This appeal is from an interlocutory decretal order of the circuit court in equity sustaining the respondents' demurrer to the bill as amended.

The original bill was a statutory bill to quiet title calling on the "said respondents, and each of them, to set forth and specify their title, claim, interest or encumbrance and how and by what instrument the same is derived or created."

The respondents answered, denying complainants' peaceable possession, and setting forth that they are the owners of all "mineral and all coal, oil and gases in, on or under said described lands and have the right to enter upon the same and prospect for and when found take out, mine and remove the said minerals, coal, oil and gases in any manner or way necessary or convenient," and deraigned title through two grants from the United States of date October 4, 1886, and October 24, 1888, to William C. Yawkey of the fee simple title in and to said lands. Said William C. Yawkey died testate in the year 1903, and by the terms of the last will and testament of the said Wm. C. Yawkey, he devised said lands to William H. Yawkey and Augusta L. Austin, jointly, in equal shares, vesting, however, the power of sale of said lands in the executors named in said will. The will was duly admitted to probate in Jefferson and Covington Counties, in Ala-

bama. Said executors, exercising the power of sale under said will. on the 26th of May, 1905, conveyed the surface of said land by warranty deed to Henderson Lumber Company, an Alabama Corporation, reserving to the legatees under the will all of the mineral rights above stated in and ·under said lands, and through subsequent devises and grants to the respondents, showing a complete paper chain of title to said mineral interests and rights from the United States into the respondents, all of said conveyances being duly recorded in Covington County, Ala., wherein the lands are situated.

Upon the coming in of said answer, the complainants amended the bill, admitting the averments thereof, and setting up the warranty deed to the Henderson Lumber Company in May, 1905, containing the reservation of the mineral interests and rights, and alleging a conveyance by the Henderson Lumber Company to Tri-County Land Company, a corporation, on January 6, 1910, also containing the reservation of the mineral interest and rights, and a deed from the Tri-County Land Company to G. M. Heath on February 20, 1918, excepting and reserving from the conveying clause said mineral interests and mineral rights, ·all of said deeds being of record, including the last, in the office' of the Probate Judge of Covington County, Alabama. The bill then avers:

"That G. M. Heath died intestate in Covington County, Alabama, prior to November 27, 1943, and on November 27, 1943, the 'widow and all of the heirs and distributees of the estate of G. M. Heath, deceased, conveyed the land involved in this cause to the complainants herein by Warranty Deed, and title to said lands is in complainants by virtue of said Deed, which said Deed is recorded in the Office of the Judge of Probate of Covington County, Alabama, in Deed Book 98, page 18 et seq., which said Deed contains no reservation as to minerals. * * *

"The complainants further aver that the complainants, and their predecessors in title, from May 26, 1905, to the date of the filing of the bill of complaint in this cause, have been [in] possession and control of the land described herein; that they regularly returned the same for taxes and paid the taxes on the said land for each year from to-wit, 1905 to the date of the filing of the bill of complaint in this cause.

"The complainants further aver that on, to-wit, February 20, 1918, G. M. Heath, who acquired this land by Warranty Deed from Tri-County Land Company, a corporation, went into actual, open, peaceable, adverse possession of the said land, that the said G. M. Heath, his widow, heirs and distributees continuously occupied the said land from, to-wit, February 20, 1918, until November 27, 1943, occupying the same as their homestead and using the surface rights of the said land for all uses and purposes adaptable thereto for said period of time, and that on, to-wit, November 27, 1943,. the complainants herein took actual possession and control of the said land, using it for all purposes to which the same was adaptable, and holding open, notorious, peaceable and adverse possession of the same and have retained such possession continuously ever since.

"Complainants further aver that there has been no physical severance of the minerals from the surface of said lands, nor any use of said minerals or any rights pertaining thereto by either the complainants, the respondents, their predecessors in title or any one else, and that the minerals so reserved *was* not returned for taxes by the executors of the will of William Clyman Yawkey, or their successors in title, until, to-wit, the 10th day of November, 1944, at which time mineral rights so reserved were returned for taxes, by the respondents, for the current year of 1945; that during the period from, to-wit May 26, 1905, until, to-wit, the 10th day of November, 1944, the executors of the will of William Clyman Yawkey, nor any of their successors in title, have exercised no physical rights of ownership or possession of any interest in the lands involved in this cause."

There is an absence of averment in the bill that Heath under whom the complainants claim or the complainants have ever· assessed anything but the surface right and estate for taxes.

The bill as amended alleges, "that the reservation, herein referred to and through which respondents claim title, for and on account of the matters hereinabove alleged is now of no force and effect and is a . nullity and constitutes a cloud on Complainants' title to the land described herein which they are entitled to have removed."

The demurrer ·to the bill as amended challenged its sufficiency for want of equity and sundry other grounds.

The contention of appellants is that the conveyance of the surface right by the holder of the fee simple title in possession, reserving the mineral interest and rights in the grantor, does not, in the absence of actual possession and exploitation by the grantor, sever possession of the mineral estate from the surface estate, and the possession of the mineral estate follows and remains with the surface tenant. To sustain this contention appellants rely on Moore et als. v. Empire Land Co., 181 Ala. 344, 61 So. 940; Black Warrior Coal Co. v. West et al., 170 Ala. 346, 54 So. 200; Alabama Fuel & Iron Co. v. Broadhead, 210 Ala. 545, 98 So. 789.

In the case first cited, it is stated as a general proposition, well settled in the law, that "Title to land always gives constructive possession to the holder thereof, in the absence of the actual possession in another." In the Moore case the deed which conveyed the surface, separate and apart from the mineral rights, constituting, as the court held, a severance by "mere legal fiction," was made by an adverse possessor under color of title, one claiming adversely to the true owner and holder of the legal title. There can be no question that such adverse possession, if continued for the statutory period or the time necessary to raise an indisputable presumption of title under the doctrine of prescription as against the true owner, would give title to both the surface and the mineral rights, whether the severance continued or not.

That is not this case. Here the conveyance creating the severance was by the holder of the legal title in fee which carried with it constructive possession in the grantor at the time, and the reservation of the minerals and mineral rights, as a matter of law, reserved constructive possession in the holder of the legal title.

In Black Warrior Coal Co. v. West, et al., supra [170 Ala. 346, 54 So. 201], the evidence showed without dispute, "that the legal title to the entire interest in the lands in controversy was in the heirs of John H. Plyer, when, in 1877, one James Garner entered into the adverse possession of the same under color of title." This adverse possession continued for the statutory and prescriptive period, when the complainant in that case claiming under title from Garner filed a bill against heirs at law of Plyer, and Minnie West as such heir claimed title. The holding

was that the heirs of Plyer had lost title through adverse possession originating with the adverse possession of Garner, by whom the deed of severance was executed.

In Alabama Fuel & Iron Co. v. Broadhead, supra, the conveyance severing the surface from the mineral interest was made by one Jesse T. Bell, claiming under a warranty deed, and holding adverse possession against the true owner, whoever that was. This deed of severance, as the statement of the case shows, conveyed the surface of the entire estate to William M. Shelton, with reservation of the minerals. "Shelton thereupon took and held actual and exclusive possession of the land by his tenants, and himself moved on the land in 1886, and lived on it until November 16, 1900, claiming and using it openly, notoriously, and exclusively, as his own all the while. On that date said Shelton conveyed three separate parcels of the land—the surface only—to his three sons severally; and on March 19, 1903, he conveyed the remaining portion to his son-in-law. These grantees at once took possession of their several parcels, and they, or their successors by deed, have ever since continuously, exclusively, openly, and notoriously held and used the property as their own under claim of right. The minerals in the land have never been mined, and there has never been any physical severance of the minerals from the land." [210 Ala. 545, 98 So. 790.] The controversy in that case was between the heirs of Elizabeth Armstrong, whose right to the property was evidenced by her possession from 1859 until her death during or about the time of the Civil War, and her successors in right who continued the possession up until the suit in ejectment was filed. The plaintiff prevailed but the case was reversed and the cause remanded for a new trial. In the course of the opinion, it was stated that: "Where the owner of the entire estate in lands conveys the surface, but retains the minerals—the grantee taking possession of the land, and occupying and using it as his own under the grant, and there being no physical severance of the minerals by any one—the possession of the minerals follows the possession of the surface, and the surface owner holds possession of the minerals for and benefit of the owner in that right."

This expression is clearly inconsistent with well considered opinions by this court and the preponderance of authority, to the effect that, the holder of

the legal title remains in constructive possession of the reserved estate and rights, and that the possessor of the surface, claiming under conveyance evincing such severance, who takes no steps to remove or exploit the underlying minerals and reduce them to actual possession, open and hostile to the true owner, does not acquire title to the minerals against the holder of the legal title, no matter how long his possession may continue. Hooper v. Bankhead & Bankhead, 171 Ala. 626, 54 So. 549; Pollard v. Simpson et al., 240 Ala. 401, 199 So. 560; Ezzell v. Richardson et al., 226 Ala. 345, 147 So. 132.

Possession of surface by purchaser of land was not possession of mineral estate. Ezzell v. Richardson, supra; Birmingham Fuel Co. v. Boshell, 190 Ala. 597, 67 So. 403; Authorities 13 A.L.R. 372; Claybrooke v. Barnes, 180 Ark. 678, 22 S. W.2d 390, 67 A.L.R. 1440; Uphoff v. Tufts College, 351 Ill. 146, 184 N.E. 213, 93 A.L.R. 1232; Summers, Oil and Gas, 2d Ed., § 138.

It is familiar law, well settled in Alabama, that where one enters upon lands he is presumed to enter under the title which his deed purports on its face to convey, both as to the extent of the land and the nature of his interest. Moore et al. v. Elliott, 217 Ala. 339, 116 So. 346; Dew v. Garner, 207 Ala. 353, 354, 92 So. 647, 27 A.L.R. 5; Joyce v. Dyer, 189 Mass. 64, 75 N.E. 81, 109 Am.St.Rep. 603.

Under the doctrine last above stated, G. M. Heath is presumed to have occupied only the surface under his deed from the Tri-County Land Company and, said deed being of record, the complainants, who claim under a conveyance from the widow and heirs of Heath, were chargeable with notice of the character of estate which Heath held; and in the absence of notice to the holders of the legal title to the mineral interests, evinced by active exploitation of the minerals in and under said land, the occupancy of the surface is not adverse; and no matter how long continued, does not ripen into title, nor does the failure of the true owners to exercise the right of taking the minerals, or their failure to assess the land for taxes operate as a forfeiture or waiver of their legal title. The allegations of the bill as last amended show that complainants claimed under the deed executed in 1943, and there has been no active possession or exploitation of the minerals in and under said land. These allegations, resolving doubtful intendments against the pleader, fall short of establishing title by adverse possession of the mineral estate and rights reserved by the owner, or that the true owners have not such title and constructive possession thereof. Federal Land Bank of New Orleans v. Vinson, 246 Ala. 95, 18 So. 2d 865.

The bill as amended is without equity, and the decree of the circuit court is free from error, and due to be affirmed. It is so ordered.

Affirmed.

All the Justices concur.