91 So.2d 700

**Guy W. HANNA**

v.

**Frank FERRIER et al.**

**6 Div. 11.**

Supreme Court of Alabama.
Nov. 1, 1956.

Rehearing Denied Jan. 10, 1957.

Phil Joiner, Birmingham, for appellant.

James & Beavers, Birmingham, for appellees.

STAKELY, Justice.

Guy W. Hanna (appellant) filed a statutory bill to quiet title to about seven acres of land situated in Jefferson County on the old Montgomery Highway. The suit was instituted against Frank Ferrier and Edna Ferrier (appellees) and against Will F. Franke and F. H. Cornelius, who were later stricken as parties respondent. The respondents Frank Ferrier and Edna Ferrier answered the bill of complaint, setting up their title to, claim and interest in the property. The case was tried ore tenus before the court and resulted in a decree holding in effect that the respondents Frank Ferrier and Edna Ferrier were the owners of and had title to the property and that the complainant Guy Hanna had no title or interest therein. The appeal here is from the foregoing decree.

We summarize briefly the chain of title through which Frank Ferrier and Edna Ferrier (appellees) claim. The property was sold for nonpayment of taxes to the State of Alabama on April 27, 1939. Frank Holle purchased a tax certificate in 1941, which means that he would become entitled to a deed to the property "after the

expiration of three years from the date of sale". § 276, Title 51, Code of 1940. It is claimed that Frank A. Holle or his privies had the open, notorious, exclusive, adverse possession of the property from September 17, 1941, to the date it was sold and conveyed by Frank Holle to F. H. Cornelius on July 19, 1948. F. H. Cornelius sold and conveyed the property to Frank Ferrier and Edna Ferrier on July 19, 1948.

We also summarize briefly the chain of title to the property as claimed by Guy W. Hanna (appellant). Mary H. Denson was the owner and assessed the property for the year 1938. She was, therefore, the owner at the time the property was sold to the State of Alabama on April 27, 1939. Mary H. Denson conveyed the property to her husband Paine Denson on July 15, 1941. Paine Denson conveyed the property on March 11, 1954, to Guy W. Hanna, complainant in the lower court and appellant here.

The testimony in the case shows in substance the following. Frank A. Holle purchased a certificate from the State of Alabama to the property in litigation on September 17, 1941. It is undisputed that Mary H. Denson was the record owner of this property at the time it was sold to the State of Alabama for delinquent taxes and was assessed in her name on the tax records in Jefferson County for the year 1938. The deed to Frank A. Holle was issued and delivered to him on January 14, 1946. He was entitled to a deed on April 27, 1942. No question appears to be presented as to the delay in the issuance of the deed. Tendencies of the evidence showed that the property was purchased by Frank A. Holle with his own money and that when he went into the army he left the property in charge of his father, William A. Holle, who lived just across the county road from its location.

Tendencies of the evidence further showed that in the spring of 1942, Mrs. W. A. Holle, the mother of Frank A. Holle,

with her husband W. A. Holle began to make improvements on the property with the consent of their son Frank A. Holle. A two strand barbed wire fence was constructed completely along the easterly boundary of the property running from the northern boundary line of the old Montgomery Highway to the back of the property. There was also constructed by them a barbed wire fence along the northerly boundary line of the property connecting the easterly boundary line fence with the westerly side of the property on which resided one Stamps. Another fence was constructed dividing the property into two sections, the northerly part of which was used by cattle and the southerly part of which was used for a garden and to raise hogs and keep cows. On the southerly part, a substantial part of the property was put into a garden in the spring of 1942 and a Negro by the name of George was permitted to build a cow pen and keep cows on the property. Mr. and Mrs. W. A. Holle moved their hog pen from their home property across the road over onto the southerly part of the property here involved and began to raise their hogs thereon. Tendencies of the evidence showed that the building of fences and these acts of cultivation, raising hogs, keeping cattle on the back part of the seven acres, continued each year until the property was sold on July 19, 1948, when Frank A. Holle sold the property to F. H. Cornelius. Tendencies of the evidence showed that the foregoing acts could easily be seen from the old roadway running in front thereof.

Tendencies of the evidence further showed that Frank Holle in 1947 sold to one Watkins the pine timber on the property for which he received the sum of $70. The pine timber was of small growth. Tax receipts for the years 1941, 1942, 1943, 1944, 1945 and 1948 were introduced in evidence, showing that the property was assessed in the name of Frank A. Holle and that he paid the taxes on the property for those years. Tax receipts were intro-

duced in evidence for the years 1949, 1950, 1951, 1952, 1953 and 1955, showing the property to have been assessed in the name of Frank Ferrier and Edna Ferrier and taxes paid thereon by them.

Tendencies of the evidence further showed that Frank A. Holle paid the taxes for the years 1946 and 1947 and assessed the property for those years in his name.

The testimony of F. H. Cornelius showed that he purchased the property from Frank A. Holle, that he was on the property in 1948 and that the fences were completely around the property, the cross fence was there and the front part of the property was in cultivation and the hog pens and cow sheds were there. According to his testimony he walked over the property and saw where pine timber had been cut from the property recently.

Frank Ferrier testified that he went all over the property just prior to his purchase of it from Mr. Cornelius in 1948 and that at that time there were in existence the fences testified to by the other witnesses, that it was being cultivated and at that time the hog pens and cow pens were there. He further testified that he observed pine stumps where timber had recently been cut scattered over the entire tract. Frank Ferrier further testified that he gave the neighbors permission to continue the use of the land for gardens and that they did continue to use it for such purpose for a time after he purchased the property. He went out periodically himself and walked over the land and planted a few fruit trees on it.

The complainant Guy Hanna testified that he rode by the property on occasions and did not observe the fences or use of the property. He testified that he went into possession when he purchased the property in 1954 by going out there and building a fence thereon and putting up "No Trespassing" signs.

Section 295, Title 51, Code of 1940, referred to as the short statute of limita-

tions provides that where the purchaser at a tax sale has gone into possession, the former owner or his grantee must take affirmative action to regain possession within three years from the date the purchaser became entitled to demand a deed therefor or such action is barred. This Court has construed this section many times and we see no reason to cite the long list of cases which support the foregoing statement. We do refer to the case of Odom v. Averett, 248 Ala. 289, 27 So. 2d 479, 480. In the case here referred to this Court said:

> "The above-quoted statute, which is generally referred to as 'the short statute of limitations,' has application when a party comes into equity to quiet title as well as in ejectment suits. Long v. Boast, 153 Ala. 428, 44 So. 955. It has application to cases where the land is purchased from the State as well as to instances where the purchase is made from the tax collector. Doe ex dem. Evers v. Matthews, 192 Ala. 181, 68 So. 182; Howard v. Tollett, 202 Ala. 11, 79 So. 309."

The tax proceedings under which the tax sale to F. A. Holle occurred are not set out in the evidence. There is no proof, therefore, in the record that the tax sale was valid. Landrum v. Davidson, 252 Ala. 125, 39 So.2d 662. Section 295, Title 51, Code of 1940, however, has been construed to apply to void tax sales just as much as it does to valid tax sales. Odom v. Averett, supra.

Under the circumstances the question to be decided in this case is whether F. A. Holle and his privies had adverse possession for the period required by the statute. In this connection it was not necessary to show that Frank A. Holle, who purchased the property from the State of Alabama in 1941, actually took possession of the property himself. It is sufficient if he took possession through an agent or

through a licensee. Odom v. Averett, supra; Bedsole v. Davis, 189 Ala. 325, 66 So. 491. Tendencies of the evidence show that the purchase of the property was made by Frank A. Holle by and through his father W. A. Holle. W. A. Holle took the money Frank A. Holle gave to him and went to the court house in Bessemer, Alabama, along with his wife Mrs. Katherine Holle and secured the certificate. Tendencies of the evidence further show that Frank A. Holle turned the property over to his father W. A. Holle to handle for him and that all the actions with reference to the purchase and improvement of the property were done and taken by W. A. Holle for the benefit of his son F. A. Holle.

F. A. Holle was entitled to a deed from the Probate Judge on April 17, 1942. § 276, Title 51, Code of 1940. It is the contention of the appellees that the proof showed that Frank Holle by and through his father, W. A. Holle, was in the open, notorious, exclusive, hostile, adverse possession of the entire tract of land from April 27, 1942, until he sold the property to F. H. Cornelius in 1948.

As stated the court heard the evidence orally and concluded that the respondents Frank and Edna Ferrier, who purchased the property from F. H. Cornelius, who in turn had purchased the property from F. A. Holle, were the lawful owners of the property and the title was in them by reason of adverse possession, to which we have alluded. We have carefully considered the evidence and think it amply sufficient to support the decree of the lower court. It results that the decree of the lower court must be affirmed.

Affirmed.

LIVINGSTON, C. J., and LAWSON and MERRILL, JJ., concur.