133 So.2d 239

Stephen N. PIERSON et al.

v.

A. B. CASE et al.

1 Div. 763.

Supreme Court of Alabama.

Sept. 14, 1961.

528

Sam W. Pipes, III, and Lyons, Pipes & Cook, Mobile, for appellant Pierson.

Howell & Johnsson, Mobile, for unknown respondents.

Jere Austill, Jr., Austill & Austill, Mobile, for appellee Case.

Thornton & McGowin, Mobile, for appellee Keisker.

Albert Tully, Mobile, for appellee Cole.

Slepian & Byrd, Mobile, for guardian ad litem of certain unknown respondents, appellees.

GOODWYN, Justice.

This is an appeal from a final decree of the circuit court of Mobile County, in equity, in an in rem proceeding brought pursuant to Code 1940, Tit. 7, § 1116 et seq., as amended by Act No. 882, appvd. Sept. 12, 1951, Acts 1951, p. 1521, quieting title to a five-acre tract of land (East half of Northeast quarter of Northeast quarter of Southwest quarter, Section 26, Township 2 North, Range 3 West, Mobile County) in the Citronelle oil field.

The pleadings are rather involved. It would probably be more confusing than helpful to attempt to recite them. For an understanding of the decisive questions before us, we think it will suffice to state the following:

Appellants Stephen N. Pierson and Wallace Henry Pierson claim to be the owners of the land and seek to have the fee simple title thereto quieted in them. They also seek to redeem from a state tax sale made in 1919. There appears to be no dispute that this was not a valid tax sale. In view of our conclusion that the trial court did not err in denying relief to said appellants, there seems no need to set out the chain of title relied on by them. For purposes of this appeal, we will assume, without deciding, that the record title is in them.

In 1945 the state, the purchaser at the 1919 tax sale, quitclaimed the property to W. M. Wright, which is the source of color of title relied on by appellees, as hereinafter shown. Appellees also rely on the exclusive payment of taxes on the property for ten years by W. M. Wright and his grantee of the surface, J. J. Cole, one of the appellees, as being conclusive evidence of their respective titles, as decreed by the trial court, by virtue of the provisions of Code 1940, Tit. 7, § 1123, as amended by Act No. 882, appvd. Sept. 12, 1951, supra; also, on Wright's adverse possession of the property coupled with Cole's adverse possession of the surface, under color of title, for the statutory periods of three years, as prescribed by Code 1940, Tit. 51, § 295, the so-called "short statute of limitations", applicable to actions for recovery of real estate sold for the payment of taxes, and ten years, as prescribed by Code 1940, Tit. 7, § 828. Although the doctrines of prescription and laches are also relied on, we see no need to discuss them.

A. B. Case, one of the appellees, claimed, and the trial court decreed in his favor,

title to an undivided one-half interest in the minerals in, on, or under said five-acre tract. His claim is based on the following chain of paper title, together with the exclusive payment of taxes and adverse possession by Wright and Cole, above noted, as inuring to his benefit, viz.:

1. State tax deed to W. M. Wright, dated May 9, 1945, and recorded May 16, 1945.

2. Quitclaim deed from W. M. Wright to Louis Lilly, dated July 8, 1945, and recorded July 16, 1945, conveying an undivided one-half interest in the minerals. This interest was conveyed by Lilly to A. W. Hutchings by deed dated September 18, 1948, recorded November 8, 1955, and by deed dated October 1, 1949, recorded November 14, 1955, and then conveyed by Hutchings to A. M. Keisker, one of the appellees, by statutory warranty deed dated January 26, 1956, and recorded on January 27, 1956.

3. Quitclaim deed from W. M. Wright to J. J. Cole, dated October 12, 1945, and recorded December 31, 1945, conveying all of the grantor's "right, title, interest or claim" in or to the five-acre tract, but containing a reservation to the grantor of one-half of all minerals.

4. Statutory warranty deed from W. M. Wright to A. B. Case, dated October 12, 1945, and recorded December 8, 1955, conveying all the minerals on, in and under the five-acre tract. (Although this deed purports to convey all the minerals, the trial court decreed title to only one-half to be in Case. No question as to this is presented on this appeal.)

J. J. Cole claimed title to the surface and one-half of the minerals by virtue of the quitclaim deed to him from W. M. Wright, dated October 12, 1945, supra, and exclusive payment by him and Wright of taxes on the property for ten years, and also by virtue of their adverse possession under both the "short" and the ten year statutes, as above noted.

A. M. Keisker based his claim to one-half of the minerals on the chain of title set forth in paragraph 2 of the A. B. Case chain, supra, together with Wright and Cole's exclusive payment of taxes and adverse possession, above noted, as inuring to his benefit.

After an oral hearing of the testimony, the trial court rendered a final decree quieting title to the surface in J. J. Cole, title to an undivided one-half interest in the minerals in A. B. Case, and title to the other undivided one-half interest in the minerals in A. M. Keisker. This appeal is from that decree.

No question is presented concerning Cole's claim to one-half the minerals, which was denied by the trial court; nor do the other appellees question that part of the decree quieting title to the surface in Cole. In fact, there appears to be no controversy on this appeal between Cole, Keisker and Case concerning their respective interests in the property as decreed by the trial court.

Our conclusion is that there is sufficient evidence to support a finding that Cole acquired title to the surface by adverse possession for ten years, under § 828, Tit. 7, and for three years under § 295, Tit. 51; that the exclusive payment of taxes on the property by Wright and Cole for ten years, together with their color of title, was sufficient to constitute "conclusive evidence of title" to the surface to be in Cole; and that such adverse possession and exclusive payment of taxes inured to the benefit of Case and Keisker so as to ripen in each of them title to one-half the minerals. Our reasons for these conclusions follow:

■ There seems to be no dispute that the tax deed from the state to Wright, even if invalid, was sufficient to furnish color of title. Clanahan v. Morgan, 268 Ala. 71, 76, 105 So.2d 429; Merchants National Bank of Mobile v. Lott, 255 Ala. 133, 135, 50 So.2d 406; Odom v. Averett, 248 Ala. 289, 292, 27 So.2d 479; Pugh v. Youngblood, 69 Ala. 296, 299. Nor is there

any question that the other conveyances stemming from that deed furnish color of title to the several interests purportedly conveyed. So, the first question is whether the tacked possession of Wright and Cole was adverse for the statutory period of ten years (Code 1940, Tit. 7, § 828, supra) so as to ripen title to the surface in Cole. Having concluded that there is evidence to support such finding, the second question is whether such adverse possession of the surface inured to the benefit of Case and Keisker (each being the holder of color of title to one-half the minerals and neither having actual possession of them) so as to mature title to one-half the minerals in each. The answer is "yes".

■ As already noted, the evidence was taken orally before the trial court. Hence, its conflicting tendencies must be considered in the light most favorable to appellees, the same as if there had been a jury trial. While there are conflicting tendencies in the evidence from which the trial court could have found against appellees' contention with respect to adverse possession, we think there is sufficient evidence supporting the decree quieting title to the surface in Cole under both the ten year and the three year statutes. In this situation, in order to reverse, insofar as the decree quiets title to the surface in Cole, we would have to say that the trial court's conclusion from the evidence on the issue of Cole's adverse possession was plainly and palpably wrong. This we are unable to do.

There are tendencies in the evidence establishing the following:

The five-acre tract is principally "swampy" wild land, containing a small amount of timber. It is located in the corner of a forty-acre tract, the other thirty-five acres in said tract belonging to the family of Mr. Blakely Young when Wright acquired his tax deed in 1945. At that time, Mr. Young's daughter, Mrs. Birdie Walker, was living with him. When Wright acquired his tax deed he went on the land and posted it with "keep out" or "no trespassing" signs.

He took Mr. Young on the land and tried to sell it to him. He arranged with Mr. Young to look after the land for him, at the same time giving Mr. Young permission to water his cattle on the property. Neither Mr. Young, until his death in 1951, nor his daughter, Mrs. Walker, who continued to water the cattle there after her father's death, ever claimed any interest in the land. In fact, Mrs. Walker, at the trial, disclaimed any interest in it. When Cole acquired his deed in 1945 he also went to Mr. Young and arranged with him to look after the property—to look after the green timber—and told him he could "have the stove wood off of it"; and had an arrangement with him about the cattle—"I just told him to keep it, use it and watch it", which he did. About 1949 Cole cut the timber, and between 1945 and the time the suit was filed he went on the place about twenty times. There is no road adjoining the five-acre tract. It is accessible by going across the Young-Walker 35-acre tract. It is not susceptible to cultivation or use as a pasture or other improvement. The only reasonable use to which it could have been put was the growing of a small amount of timber, watering cattle and hunting. Cole gave permission to at least one person to hunt on it. While it is not clear whether the watering of the cattle after Mr. Young's death was with Cole's express permission, we are inclined to the view that the evidence, on the whole, affords a reasonable inference that the continued use for such purpose was with his permission. Clearly, there is no evidence indicating that Mrs. Walker was claiming any interest in the five-acre tract nor that it was being used by her for watering the cattle with anyone else's permission.

It has been held that " 'to constitute an actual possession of land it is only necessary to put it to such use or exercise such dominion over it as in its present state it is reasonably adapted to.' " Moorer v. Malone, 248 Ala. 76, 78, 26 So.2d 558, 559; Alabama State Land Co. v. Matthews, 168 Ala. 200, 53 So. 174. In Clanahan v. Mor-

gan, 268 Ala. 71, 81, 105 So.2d 429, 437, supra, it is said that "all acts of a possessory nature committed by the adverse claimant are to be considered collectively rather than independently in determining the sufficiency of his possession. Chastang v. Chastang, 141 Ala. 451, 37 So. 799."

The following from Goodson v. Brothers, 111 Ala. 589, 595–596, 20 So. 443, quoted with approval in Clanahan v. Morgan, supra, is of significance here, viz.:

"'* * * Openness and notoriety and exclusiveness of possession are shown by such acts in respect of the land in its condition at the time as comport with ownership,—such acts as would ordinarily be performed by the true owner in appropriating the land or its avails to his own use, and in preventing others from the use of it as far as reasonably practicable; and near akin to these are the acts evidencing the element of hostility toward all the world. * * *

"'* * * A possession, to be adverse, need not be so open, continuous, and notorious as necessarily to be seen and known by the owner if he should casually go upon the land.' "

■ It is also established that, in determining whether a purchaser at a tax sale and his privies have had adverse possession for the required period, it is not necessary that they should have had actual possession of the property themselves, it being sufficient that they had possession through an agent or a licensee. Hanna v. Ferrier, 265 Ala. 450, 453–454, 91 So.2d 700.

■ In the light of the foregoing principles, we cannot say that the trial court erred in quieting title to the surface in Cole.

■ Since the evidence was sufficient to support a finding of Cole's adverse possession of the surface for ten years, then it follows that it was sufficient to show adverse possession for three years so as to make applicable the provisions of § 295, Tit. 51, Code 1940, supra, referred to as the "short statute of limitations." Because the tax sale was void, does not render § 295 inapplicable. Odom v. Averett, 248 Ala. 289, 291–292, 27 So.2d 479, supra.

■ We come now to consider whether Wright and Cole's adverse possession of the surface inured to the benefit of Case and Keisker. Our view is that it did. There is an excellent discussion of this question in III Ala.Law Review 145, 150, in which Alabama cases (Black Warrior Coal Co. v. West, 170 Ala. 346, 54 So. 200; Birmingham Fuel Co. v. Boshell, 190 Ala. 597, 67 So. 403; Moore v. Empire Land Co., 181 Ala. 344, 61 So. 940; Alabama Fuel & Iron Co. v. Broadhead, 210 Ala. 545, 98 So. 789; Buckelew v. Yawkey, 247 Ala. 304, 24 So.2d 133) and others are analyzed and discussed. The conclusions there reached, pertinent here, and which we think are supported by the authorities, are stated as follows:

"(4) Only the holder of legal title to land is empowered by law to sever the estate, and even his attempts to sever by conveyance are inoperative after he has been disseised. Neither are the adverse possessor's efforts to sever of any effect (except as between himself and his grantee) as he has no title; hence no severance by conveyance can be effected during a period of adverse possession.

"(5) When a wrongful entry is made upon land before severance and the adverse holder later attempts a severance by conveyance, the statute continues to run if either the grantee, grantor, or their privies stay in possession of the surface or minerals, and the severance becomes effective, under a theory of estoppel, upon completion of the adverse period."

In Clanahan v. Morgan, 268 Ala. 71, 82, 105 So.2d 829, supra, it was held that the

adverse possession of the surface inured to the benefit of the mineral title.

From Carlisle v. Federal Land Bank of New Orleans, 217 Miss. 289, 64 So.2d 142, 143, is the following:

"The general rule is that, where there has been a severance of minerals by an adverse possessor, the continued adverse possession of the surface by the severor or severee inures to the benefit of the severed mineral estate as against the true owner. This is true whether the adverse possessor conveys the surface and reserves the minerals, or keeps the surface and conveys the minerals. A case substantially similar to the present one and holding to this effect is McLendon v. Comer, Tex.Civ. App.1947, 200 S.W.2d 427. To the same effect are Clements v. Texas Co., Tex.Civ.App.1925, 273 S.W. 993, 1005; Alabama Fuel & Iron Co. v. Broadhead, 1924, 210 Ala. 545, 98 So. 789; Black Warrior Coal Co. v. West, 1911, 170 Ala. 346, 54 So. 200; Laird v. Gulf Production Co., Tex.Civ.App.1933, 64 S.W.2d 1080; McCombs v. Abrams, Tex.Civ.App.1930, 28 S.W.2d 584, 602; Leverett v. Leverett, Tex.Civ.App.1933, 59 S.W.2d 252; Broughton v. Humble Oil & Refining Co., Tex.Civ.App.1937, 105 S.W.2d 480; Thomas v. Southwestern Settlement & Development Co., Tex.Civ.App.1939, 131 S.W.2d 31; Kilpatrick v. Gulf Production Co., Tex. Civ.App.1940, 139 S.W.2d 653. See also Masterson, Adverse Possession and the Severed Mineral Estate, 25 Tex.L.Rev. 139 (1946); 25 Tex.L.Rev. 108 (1947, Comment on McLendon v. Comer, supra). Cook v. Farley, 1943, 195 Miss. 638, 654-655, 15 So.2d 352, is not applicable to the present facts. The rule there stated is that in controversies between the severing grantor and severing grantee, or those claiming under the severing title, possession of the surface is not possession of the minerals. The rationale of the McLendon v. Comer rule is that, while a sever-

ance binding upon the parties to it was effected, no actual severance as to third parties was accomplished, since the severor did not have title, and continued possession by either the trespassing grantor or grantee continues to give notice to the true owner of the hostile claim being asserted by the adverse possessors against his title to the combined surface and mineral estate.

"25 Texas Law Review 108, 110, states the following as additional reasons for this rule: 'As against a third party, possession by either the grantor or grantee where severance is attempted by a trespasser should be regarded as possession of the entire premises for the benefit of both, since collectively they are asserting a common title against the third party of which he has adequate notice by the possession of either. * * *'"

The recent case of Temples v. First National Bank of Laurel, 239 Miss. 446, 123 So.2d 852, 856, 125 So.2d 543, reaffirms the holding in Carlisle.

Among additional authorities supporting the rule are Tennessee Coal, Iron & R. Co. v. Brewer, 5 Cir., 92 F.2d 804, 805, and Shively v. Elkhorn Coal Corp., 217 Ky. 192, 289 S.W. 262. See, also, Annotation: "Acquisition of title to mines or minerals by adverse possession", 35 A.L.R.2d 124, 154.

■ Since there could have been no severance by the original adverse possessor (Wright), because he did not have title to the property when he gave deeds separately to the surface and the minerals, the continued adverse possession of the surface by Wright's grantee of the surface (Cole) inured to the benefit of Wright's grantees of the minerals (Case and Keisker).

The remaining questions are whether the exclusive payment of taxes for ten years by Wright and Cole, together with their color of title, was sufficient to constitute "conclusive evidence of title" to the surface in

Cole, under the provisions of § 1123, Tit. 7, as amended, supra, and whether such payment of taxes inured to the benefit of Case and Keisker so as to constitute such payment, together with their respective colors of title, "conclusive evidence of title" in each of them to one-half the minerals, under the provisions of said § 1123, as amended. We think so.

Section 1123, as amended, provides, in pertinent part, as follows:

"§ 1123. Prima facie and conclusive evidence of title.— * * * Against all persons who have neither paid any taxes upon said lands nor had any possession thereof, or of any part thereof, during the ten years next preceding the filing of the bill of complaint, and against all parties to the bill of complaint who have made no answer thereto within the time allowed for such purpose, and against all persons not intervening in said cause and claiming an interest in said lands prior to the time the cause became at issue, proof of color of title to said lands in complainant, or in complainant and those through whom he claims title, and payment of taxes during said ten-year period by complainant, or by complainant and those through whom he claims title, or proof of exclusive payment of taxes by complainant, or by complainant and those through whom he claims title, during said ten-year period, shall be conclusive evidence of title to said lands in complainant."

The circumstances bringing this provision into play are as follows:

■ When W. M. Wright acquired his tax deed from the state on May 9, 1945, he paid the 1945 taxes. For each succeeding year down to the time of the filing of the bill on February 6, 1956, Cole made return of the property as a whole for assessment and paid the taxes thereon. His first return was made in December 1945 for the 1946 taxes. Cole paid the taxes on the property for each of the years 1946 through 1955. So, it can be seen that he paid the taxes for the perscribed ten-year period. No one else paid taxes on the property or any interest therein during such period and none of the parties against whom the decree was directed was in possession of the property or any interest therein. Accordingly, under the express provisions of § 1123, Tit. 7, as amended, supra, Cole clearly was entitled to have the title to the surface quieted in him.

■ Since neither Case nor Keisker paid any taxes on the property, the question then arises whether the payment of the taxes by Wright and Cole inured to the benefit of Case and Keisker, the holders of color of title to the minerals. In other words, can Case and Keisker claim the benefits of § 1123, as amended, even though they have paid no taxes on their claimed mineral interests in the property? We think so. In this connection, it should be remembered that the several colors of title relied on, both as to the surface and the minerals, originated with a common grantor.

As we view it, the situation with respect to the payment of taxes by the holder of color of title to the surface is analogous to that when such holder has adverse possession. If the adverse possession of such holder inures to the benefit of the holder of color of title to the minerals, there seems no good reason why the payment of taxes by the holder of color of title to the surface should not also inure to the benefit of the holder of color of title to the minerals.

The decree is due to be affirmed.

Affirmed.

LIVINGSTON, C. J., and SIMPSON, J., concur.

COLEMAN, J., concurs as shown by separate concurrence.

COLEMAN, Justice.

I concur in affirmance of the decree appealed from and in the opinion except as to the holding with reference to the right of Case and Keisker to claim as taxpayers. I do not concur in that holding and regard it as unnecessary to this decision.