BURBRIDGE *v.* ROSEN, TRUSTEE

5-3825                                          400 S. W. 2d 502

Opinion delivered March 21, 1966

*Jeff Davis,* for appellant.

*Richard C. Crockett, Robert M. Bass, Jr., Williamson, Williamson & Ball, McKay, Anderson & Crumpler,* for appellee.

GEORGE ROSE SMITH, Justice. This case involves the ownership of the oil, gas, and other minerals within a

72.79-acre tract of land in Bradley county. Two suits to quiet title to the minerals in dispute, one filed by the appellants and the other by the appellees, were consolidated for trial in the court below. This appeal is from a decree finding that the appellees own the mineral interest in question.

There is no dispute about the facts. The case was tried upon stipulations and written exhibits, without oral testimony. Neither side is able to trace a perfect record title back to the United States. The 72.79-acre tract was unimproved and unenclosed until a producing oil well was completed in 1962 by a lessee who has oil and gas leases from all the rival claimants. In the absence of a perfect record title the controlling question is whether it is the appellants or the appellees who have acquired title to the minerals by the payment of taxes under color of title for seven years.

We begin with the premise that the appellants, the heirs of L. J. Burbridge, established a *prima facie* title by proof that Burbridge paid the taxes upon the 72.79-acre tract, under color of title (but without actual title), for sixteen successive years extending from 1939 through 1954. Ark. Stat. Ann. § 37-102 (Repl. 1962). The minerals, however, have never been separately assessed for taxation. For that reason Burbridge did not acquire title to the minerals if, as the appellees contend, the mineral interest had been validly severed from the surface interest some years before Burbridge began paying taxes on the tract under its legal description. *Claybrooke v. Barnes,* 180 Ark. 678, 22 S. W. 2d 390, 67 A.L.R. 1436 (1929).

The three sets of appellees contend that their respective predecessors in title, Bell, Sproat, and Stout Lumber Company, acquired title to the 72.79-acre tract as a result of Stout Lumber Company's payment of taxes, under color of title, for seven years extending from 1921 through 1927. Thereafter, in 1928, Stout Lumber Company conveyed the land to Nickey Broth-

ers, Inc., but reserved all the minerals. The appellees contend that this reservation of the minerals by Stout was a valid severance which, under *Claybrooke* v. *Barnes, supra,* prevented Burbridge from acquiring anything except the surface interest by his subsequent payment of taxes.

The appellees' contention presents three questions of law, upon all of which the appellees must prevail to establish their title. All three questions are aspects of a broader issue: Did Stout Lumber Company obtain a valid title to the 72.79-acre tract? If, as the appellants insist, Stout did not acquire title to the property, its attempt to reserve the minerals in its deed to Nickey Brothers was not an effective severance.

First: Did Stout Lumber Company have color of title? We need trace its chain of title only back to Effie Temple, who received a deed (which conveyed color of title only) to the 72.79-acre tract in 1912. Later in 1912 Effie Temple conveyed to George A. Bell. In 1920 Bell conveyed to J. C. Sproat, reserving one fourth of the minerals. The claim to that one-fourth mineral interest has passed by inheritance to one of the appellees. Later in 1920 Sproat conveyed to S. T. Tyson, reserving an additional one-fourth of the minerals, the claim to which has passed to another set of appellees. Still later in 1920 Tyson conveyed the tract to Stout Lumber Company, reserving the one-half mineral interest that had been retained by Bell and Tyson. The claim to the half interest received by Stout has passed to the third set of appellees.

Counsel for the appellants insists that Tyson's deed to Stout did not constitute color of title, for the reason that the deed contained a reservation of half the minerals. It is argued that to constitute color of title "an instrument must purport to vest in the grantee fee simple title to the land described in the instrument."

No authority directly in point is cited to support

this argument. The contrary view was taken in *Pierson* v. *Case,* 272 Ala. 527, 133 So. 2d 239 (1961), under a tax-payment statute similar to ours. There Wright and his successors in title executed various deeds, some purporting to convey fractional mineral interests and others purporting to convey the surface with a reservation of mineral interests. The court recognized that the various conveyances, all stemming from a common source, constituted color of title to the several interests separately conveyed.

We think the court's conclusion to be sound. In the case at bar, if Tyson had executed a deed purporting to convey the fee simple to Stout and if Stout had then conveyed a one-half mineral interest back to Tyson, it cannot be doubted that Stout and Tyson would have had color of title to their respective interests. Inasmuch as Tyson's predecessors already had color of title to half the minerals, an identical result was accomplished by Tyson's reservation of that interest in his deed to Stout.

As a practical matter the position we are taking is a desirable one. From the record owner's point of view, the payment of taxes upon his unimproved land puts him on notice that a hostile claim may be outstanding. When he makes an inquiry into the matter, as he is bound to do, he is not prejudiced in any way by the fact that his investigation leads to a deed with a mineral reservation rather than to a deed purporting to convey the fee. On the other hand, the tax-paying claimant ought not to be denied the benefit of the statute merely because a fractional mineral interest was retained by his grantor. We find no sound basis, theoretical or practical, for sustaining the appellant's argument upon the first question.

Secondly: During the seven years that Stout paid the taxes upon the tract color of title to half of the minerals was vested in Bell and Sproat and color of title to the surface and to the other half of the minerals was

vested in Stout. In the circumstances, did Stout's tax payments operate to invest title to the entire mineral interest in Bell, Sproat, and Stout?

This question, according to what appears to be the unanimous current of authority, must be answered in the affirmative. In this particular situation, Bell, Sproat, and Stout were not in a position of hostility toward one another. By their joint claim of ownership they made common cause against the holder of the record title. Hence each claimant can reap the benefit of tax payments made by any one of the three.

Upon this point, only the case of *Pierson* v. *Case, supra,* seems to involve the situation now before us, which has to do with tax payments rather than actual adverse possession. In the *Pierson* case the court held that tax payments by some of the claimants inured to the benefit of all.

The case at bar is, however, comparable to one involving actual adverse possession. In Arkansas, the payment of taxes upon wild land is in effect an instance of adverse possession; for we have held that the payment of taxes confers a constructive possession which, by operation of the general statute of limitations, ripens into title. *Hubble* v. *Grimes,* 211 Ark. 49, 199 S. W. 2d 313 (1947). Hence we are really dealing with a case of adverse possession; so authorities in that branch of the law are pertinent. It is well settled that when a trespasser in actual adverse possession of property either conveys the land with a reservation of a mineral interest or conveys a mineral interest by itself, the continued possession by the surface claimant inures to the benefit of the mineral interest as well. The leading cases are *McLendon* v. *Comer,* 200 S. W. 2d 427 (Tex. Civ. App. 1947), noted in 26 Tex. L. Rev. 108 (1947), and *Clements* v. *Texas Co.,* 273 S. W. 993 (Tex. Civ. App. 1925); see also *American Petrofina* v. *Warren,* 247 Miss. 552, 156 So. 2d 729 (1963), and Masterson, Adverse Possession and the Severed Mineral Estate, 25 Tex. L. Rev. 139

(1946). Hence Stout's tax payments inured to the benefit of Bell and Sproat, ripening into title at the end of seven years.

Thirdly: Stout Lumber Company paid the taxes for six years, from 1921 through 1926, but in 1927 the taxes were paid by Nickey Brothers, to whom Stout conveyed the surface in 1928. Are the appellees entitled to tack the Nickey payment to the six Stout payments to establish their claim of title?

This question, too, must be answered in favor of the appellees. On October 7, 1926, Stout executed a contract of sale by which it agreed to sell the 72.79-acre tract, less the minerals, to Nickey Brothers. That contract continued in force until its complete performance in 1928, when Stout deeded the surface of the land to Nickey Brothers. In a situation such as this one, where two claimants are in privity, the payment of taxes by one should redound to the benefit of both. The reason for the rule was well expressed in *Kuhn* v. *Glos*, 257 Ill. 289, 100 N. E. 1003 (1913), where a trustee was held to be entitled to take advantage of tax payments made by the beneficiary of the trust. After citing cases the court said:

"These cases hold that the true question is, Under what title were the taxes paid? and deduce the rule that, if payment of taxes is made by the cestui que trust, the effect is the same as if made by the trustee, as the two interests stand together, and not in hostility to each other, and united make the estate or legal and equitable title to the land. They further hold that the same result follows whether payment is made by the trustee or cestui que trust, or by the landlord or the tenant; the question being whether possession was held and the taxes were paid in subserviency to the claim and color of title relied on as a bar."

Other cases reaching a similar result include *Brown* v. *Clark*, 89 Cal. 196, 26 Pac. 801 (1891), involving

mortgagor and mortgagee; *Cooper* v. *Carter Oil Co.,* 7 Utah 2d 9, 316 P. 2d 320 (1957), involving joint operators of property; and *Kraemer* v. *Kraemer,* 334 P. 2d 675 (Cal. App. 1959), involving lessor and lessee. Contracts for the sale of real estate upon deferred payments frequently require the purchaser to pay the taxes. There is every reason to treat such payments as having been made for the benefit of both parties to the agreement.

For the reasons stated we hold that the appellees are the owners of the minerals in question by reason of the payment of taxes by Stout and Nickey for seven successive years under color of title.

Affirmed.

McFADDIN, J., concurs.